**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael Dennis TALBOTT,**
**Defendant–Appellant.**
**(Two Cases)**

Nos. 89–5017, 89–5149.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 7, 1989.

Decided May 3, 1990.

As Amended July 10, 1990.

Douglas P. Connor, Mt. Olive, N.C., for defendant-appellant.

Karen Ingrid Skrivseth, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Thomas M. Gannon, U.S. Dept. of Justice, Washington, D.C., Margaret Person Currin, U.S. Atty., Raleigh, N.C., on the brief, for plaintiff-appellee.

Before ERVIN, Chief Judge, and WIDENER and HALL, Circuit Judges.

K. K. HALL, Circuit Judge:

Michael Dennis Talbott was convicted of various firearms violations and was sentenced to a total of 45 years imprisonment. On appeal he contends that certain evidence used at his trial was illegally seized during a search of his residence and that there was insufficient evidence produced to support his conviction on two counts of possession of unlawfully-made firearms. He also attacks certain aspects of the sentence. We affirm the convictions but vacate the sentence and remand for resentencing.

## I.

Based on information that Talbott had in his possession false driver's licenses and other identity-changing materials, Raleigh city police officer Stacey Coleman obtained a search warrant to search Talbott's residence. The search was carried out on February 27, 1988; at the same time, Talbott was arrested on a fugitive warrant from Virginia. The search of his residence uncovered guns and two pipebombs as well as extensive identity-changing material. Also seized were various books on bomb-making and a handwritten "hit list" containing the names of various public officials related in some way to Talbott's prior legal troubles.

During trial, Talbott moved to suppress both the books on bomb-making and the "hit list." The court interrupted the trial to conduct an evidentiary hearing on the motion. The motion was denied, and both the books and "hit list" were admitted into evidence.

Talbott was convicted of possession of unlawfully-made destructive devices (pipebombs), in violation of 26 U.S.C. § 5861(c) (counts 4 and 7); possession of unregistered firearms (pipebombs), in violation of 26 U.S.C. § 5861(d) (counts 5 and 8); possession of a firearm (pistol) by a felon, in violation of 18 U.S.C. § 922(g)(1) (count 10); making a false statement to obtain a firearm (pistol) in violation of 18 U.S.C. § 922(a)(6) (count 1); and possession of firearms (pipebombs) by a felon, in violation of 18 U.S.C. § 922(g)(1) (counts 12 and 14). The jury acquitted him of two counts of illegally manufacturing firearms (pipebombs) (26 U.S.C. § 5861(f)).[1]

The presentence report prepared by the probation officer recommended that all six Guideline counts be grouped together. U.S.S.G. § 3D1.2.[2] Under U.S.S.G. § 3D1.3, the highest offense level for these counts was determined to be that applicable to Counts 4 and 5, the "Receipt, Possession and Transportation of Firearms."

U.S.S.G. § 2K2.2(a). This produced a base offense level of 12 for the grouped counts. The court increased this by two levels due to a finding that the use of identity-changing paraphernalia and the manufacture of the pipebombs required "special skills." U.S.S.G. § 3B1.3. Talbott's initial refusal to give handwriting exemplars and his implication in a conspiracy to escape from jail formed the basis for the court's decision to increase the offense level by two for obstruction of justice. U.S.S.G. § 3C1.1. This produced a total offense level of 16 which, in conjunction with a criminal history category of V, resulted in a Guideline sentence range of 41–51 months.

The district court then ruled that the bomb-possession counts involved "crimes of violence" and, further, that Talbott's prior felony convictions for burglary and for breaking and entering also constituted "crimes of violence" within the meaning of U.S.S.G. § 4B1.2. The court then invoked the career criminal provisions and determined that Talbott's Guideline sentence range was 100–125 months. U.S.S.G. § 4B1.1.

The court next decided to depart from the Guidelines and imposed the statutory maximum for some of the pipebomb counts. The court then structured its sentence as follows: (1) two consecutive ten-year sentences on the unlawfully-made pipebomb convictions (counts 4 and 7); (2) two consecutive ten-year sentences on the unregistered pipebomb convictions (counts 5 and 8), to be served consecutively to the § 5861(c) sentences; (3) a five-year sentence for the felon-in-possession of a gun conviction (count 10), to be served consecutively to counts 4, 5, 7 and 8; and (4) five-year concurrent sentences on all other counts (1, 12 and 14).

This appeal followed.

## II.

▮ Talbott contends that the bomb-making books and the alleged "hit list"

---

1. On the government's motion, convictions on three fugitive counts (18 U.S.C. § 922(g)(2)) and two false statement counts (18 U.S.C. § 922(a)(6)) were vacated prior to sentencing.

2. The convictions arising out of Talbott's purchase and possession of the pistol (counts 1 and 10, respectively) were subject to pre-Guidelines sentences. Neither the convictions nor the resulting sentences are involved in this appeal.

were illegally seized and that their admission into evidence constitutes reversible error. He also argues that the lower court erred in entering a judgment of conviction on two counts of possession of unlawfully-made firearms in the absence of any evidence that the pipebombs in his possession were manufactured or transferred to him after the effective date of the statute making such devices illegal. Finally, he challenges the sentence on various grounds. We address each of these issues in turn.

The search warrant which led to the seizure of the bomb-making books and the "hit list" described only identity-changing paraphernalia, such as blank driver's licenses and birth certificates. Talbott argues that the books and "hit list" do not come within the plain-view exception to the warrant requirement and, therefore, that they should have been suppressed. He does not contest the validity of the warrant itself nor does he raise any issue regarding the police's authority to search the residence or to seize the firearms and bomb-making material.

Under the plain-view doctrine, the warrantless seizure of property is permissible if the following criteria are satisfied: (1) the police officer must first be engaged in a lawful intrusion or must otherwise legitimately occupy the position affording a plain view of the evidence seized; (2) the discovery of the evidence must be inadvertent; and (3) it must be immediately apparent that the evidence may be either contraband or evidence of a crime. *United States v. Fawole*, 785 F.2d 1141, 1145 (4th Cir.1986). Since it is conceded by Talbott that the police officers were lawfully in his residence to execute the search warrant, the first requirement is satisfied. A review of the record satisfies us that the remaining criteria were satisfied as well.[3]

Officer Coleman testified during the suppression hearing that the search for the items described in the warrant was limited to Talbott's bedroom, his bedroom closet, and a connected bathroom.[4] The court expressly found that the scope of the search was reasonable in light of the evidence of a crime involving identity-changing items. The nature of the search necessitated an examination of the documents which were strewn about Talbott's bedroom, and nothing suggests that the discovery of the "hit list" or the books was anything other than inadvertent within the meaning of *Fawole*. It is readily apparent that the books were, when viewed in conjunction with the bomb-making components, evidence of a crime. The "hit list" was also relevant evidence inasmuch as it could be viewed as listing Talbott's intended targets. We therefore affirm the denial of the motion to suppress.

### III.

Talbott attacks only the sufficiency of the evidence with regard to his convictions on counts 4 and 7, possession of destructive devices made in violation of federal law. Specifically, Talbott contends that the government failed to prove an essential element of a violation of 26 U.S.C. § 5861(c), to wit: that the devices (pipebombs) were manufactured on or after November 1, 1968, the effective date of the statute regulating the manufacture of such devices (26 U.S.C. § 5822). Since he was acquitted of manufacturing the two pipebombs, he argues that the government had to prove that whoever did manufacture the pipebombs did so after November 1, 1968; otherwise, such devices were not illegally made and, as such, § 5861(c) does not apply. At least two other circuits are split on this issue. We join the Tenth Circuit in holding that since what is prohibited is the possession of illegal firearms, the date of their manufacture is immaterial. *United States v. Berry*, 423 F.2d 142 (10th Cir. 1970); *contra Gott v. United States*, 432 F.2d 45 (9th Cir.1970).

### IV.

Talbott contends that he cannot be sentenced in excess of ten years for the

---

3. A motion to suppress evidence must normally be raised prior to trial. Fed.R.Crim.P. 12(b)(3). Although Talbott's motion was made during trial, the court reached the merits as if it had been

timely made. We likewise will reach the merits of Talbott's claim.

4. Talbott shared the residence with a roommate.

possession/non-registration counts for each pipebomb. We agree. The district court erred as a matter of law in the pyramiding of the consecutive sentences. Under *United States v. Kaplan*, 588 F.2d 71 (4th Cir. 1978), *modified on other grounds sub nom. United States v. Seidel*, 620 F.2d 1006 (1980), consecutive sentences may not be imposed for both possession and manufacture of a single firearm such that the total sentence exceeds the statutory maximum for one violation. The government concedes that the imposition of twenty-year total sentences for the possession (§ 5861(c)) and non-registration (§ 5861(d)) convictions with respect to each pipebomb was improper.

■ Talbott also contends that the district court erred in finding that he qualified for treatment as a career criminal under U.S.S.G. § 4B1.1 because his prior convictions did not involve "crimes of violence" as that term is defined in the Guidelines. Since it is conceded that Talbott's two 1975 breaking and entering convictions and his two 1976 burglary convictions involved commercial structures rather than residences, we are constrained to follow the Guideline Commission's view that such crimes do not come within the ambit of a "crime of violence." U.S.S.G. § 4B1.2, Comment (n. 1) (Oct.1987).[5] Therefore, we hold that the lower court erred as a matter of law in finding that Talbott's prior criminal record qualified him for treatment as a career criminal. For the reasons set forth in this Part, the sentence is vacated and the case remanded for resentencing.

## V.

■ In its sentencing colloquy, the lower court relied on two grounds to justify a two-level increase under U.S.S.G. § 3B1.3. First, Talbott's skill in changing his identity was evidenced by the fact that he had

been able to purchase firearms under a different name. Second, the evidence sufficiently showed that Talbott used special skills in manufacturing the pipebombs. Talbott objects to this increase in his offense level on the ground that his acquittal on the bomb-manufacturing charges precludes the use of the same evidence against him during the sentencing phase. This Court has held, however, that acquittal of an offense does not bar consideration of the conduct underlying the charge for purposes of sentencing. *United States v. Isom*, 886 F.2d 736, 738 (4th Cir.1989). By increasing the offense level under U.S.S.G. § 3B1.3, Talbott is not being punished for an offense for which he was acquitted. Instead, under the preponderance standard of proof applicable to sentencing matters, the evidence that he manufactured the bombs could be considered in imposing a heavier sentence for the offenses for which he was convicted. *Id.* at 739.

## VI.

■ Talbott raises a *Miranda* issue with regard to the use of pretrial statements made to a court official. During the course of an interview with a probation officer regarding pretrial services, Talbott admitted that he was represented by counsel with regard to several prior convictions. However, he now claims there no longer exists any record of such representation and that the government's inability to prove that he was represented would foreclose consideration of such conviction(s) in calculating his criminal history category. By failing to properly warn him that the statements during the pretrial services interview could result in a longer sentence, he contends that his right to remain silent and his right to counsel were violated. We disagree.

■ The simple answer to Talbott's argument is that the waiver form which he

---

**5.** The Application Note in question was amended, effective Nov. 1, 1989, to provide as follows:
  2. "Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included where (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth in the count of which the defendant was convicted involved use of explosives or, by its nature, presented a serious potential risk of physical injury to another.
U.S.S.G. App.C. ¶ 268 (Nov.1989).

executed did adequately warn him of his right to remain silent and to seek the assistance of an attorney; the form also advised him that an attorney would be provided if he could not afford one.[6] The waiver form further expressly informed him that the information provided to the pretrial services officer would also be made available to the probation officer who would prepare a presentence report in the event of a conviction. It is hard to imagine a clearer expression of the rights which Talbott claims were violated. Moreover, elicitation of the information regarding prior representation was not relevant to the charged offenses; as such, it does not constitute interrogation for *Miranda* purposes. *See United States v. McLaughlin,* 777 F.2d 388, 391–92 (8th Cir.1985). Indeed, the information regarding criminal history is properly considered by the court in determining whether to release or detain a suspect pending trial. *Id.* at 392; 18 U.S.C. § 3142(g)(3)(A). We find no constitutional violation arising from the consideration of these past convictions.

## VII.

■■■ The district court clearly stated that the decision to depart upward was not dependent on the findings involved in the Guideline determinations and that the career criminal enhancement had no bearing on the final departure decision. In other words, the sentence would have been the same regardless of the Guideline maximum. The length of the Guideline maximum, however, may be relevant in assessing the reasonableness of the departure. *United States v. Campbell,* 878 F.2d 164, 166 (5th Cir.1989). The sentencing court should normally first determine the correct Guideline range even if a departure is being made. *United States v. Warters,* 885 F.2d 1266, 1272 (5th Cir.1989). In the instant appeal, the incorrect application of U.S.S.G. § 4B1.1, coupled with the illegal pyramiding of the § 5861 sentences, mandates a remand for resentencing. We express no opinion, however, on whether a departure is warranted or on whether a

departure to the allowable statutory maximum is reasonable. Our conclusions with regard to the sentencing issues are summarized as follows:

(1) Talbott's prior convictions are not "crimes of violence" within the meaning of U.S.S.G. § 4B1.2 and, therefore, he may not be sentenced under U.S.S.G. § 4B1.1 as a career criminal.

(2) The increase in the offense level for use of special skills (U.S.S.G. § 3B1.3) is properly based on both Talbott's skill in changing his identity as well as on his skill in manufacturing pipebombs. Therefore, the Guideline sentence range is 41–51 months, based on an offense level of 16 and a criminal history category V.

(3) Without reaching the issue of whether the court erred in departing upward, we hold that consecutive sentences in excess of ten years may not be imposed for convictions under both 26 U.S.C. § 5861(c) and (d) to the extent that such convictions relate to the same firearm.

AFFIRMED IN PART; SENTENCE VACATED AND REMANDED.

---

**6.** We note that the district court's docket sheet reflects that counsel was appointed to represent

Talbott by order entered May 19, 1988, the same day the waiver form was executed.