946 F.2d 888
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Belton Lamont PLATT, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gordon PLATT, Defendant-Appellant.
 Nos. 90-5498, 90-5670.
 United States Court of Appeals, Fourth Circuit.
 Argued May 10, 1991.
Decided Oct. 11, 1991.
 
 Appeals from the United States District Court for the Western District of North Carolina, at Charlotte. Robert D. Potter, District Judge. (CR-89-52-C-CR, CR-89-166)
 Argued: Lawrence Wilson Hewitt, James, Mecklory, & Diehl, P.A., Prosser DeVane Carnegie, Carnegie & Miller, Charlotte, N.C., for appellant.
 Robert James Conrad, Jr., Assistant United States Attorney, Charlotte, N.C., for appellee.
 W.D.N.C.
 AFFIRMED.
 Before WIDENER and SPROUSE, Circuit Judges, and JOSEPH H. YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Belton and Gordon Platt appeal their convictions and sentences for conspiracy to possess cocaine with the intent to distribute (21 U.S.C. §§ 841(a)(1) and 846) and aiding and abetting the theft and conversion of United States government property (18 U.S.C. §§ 2 and 641). For the reasons stated below, we affirm both defendants' convictions and sentences.
 
 
 2
 * On April 10, 1989, government informer LaMorris Watson visited an apartment in Charlotte, North Carolina, where he observed several people purchase cocaine from Belton Platt and his brother, Gordon. While Watson was negotiating a drug purchase with Belton Platt, Gordon Platt entered the room carrying eight small bags of cocaine and small scales. Although Watson declined to buy any cocaine at that time, he did agree to purchase $14,000 worth of cocaine from Belton Platt later that evening. Stephen Christopher Holland and Daniel Caylor, the two federal agents who had outfitted Watson with a tape recorder and transmitter, then heard Belton Platt tell Watson the cocaine would be delivered in his Mercedes Benz.
 
 
 3
 Watson then met with Belton Platt to confirm the details of the planned purchase of cocaine. Immediately after speaking with Belton Platt, Watson told the two agents that Belton Platt would deliver the cocaine in a late-model, grey Mercedes with a personalized license plate.
 
 
 4
 When Watson returned 30 minutes later, he met Gordon Platt at the exchange site.[1] After Gordon Platt and Watson entered Watson's car to make the exchange, Belton Platt appeared and told his brother they had been set up. Gordon Platt then ran away and hid the cocaine.
 
 
 5
 When Gordon Platt returned, Belton Platt told Watson that they had to go someplace to talk. After Watson declared that he was not going anywhere with either of the Platt brothers, Belton Platt pushed him in the back and felt Watson's tape recorder and transmitter. The Platt brothers then assaulted Watson, ripped away his tape recorder and transmitter, and stole $2300 the agents had given him to buy drugs.[2]
 
 
 6
 A short time later, the agents observed a person matching Belton Platt's description--driving a Mercedes matching the description given by Watson--approach the exchange site. The agents stopped Belton Platt and told him they suspected he had cocaine in the car, but did not arrest him. Belton Platt let the agents search his car, but the search initially proved fruitless. However, when Belton Platt saw agent Holland opening the trunk, he objected and asked Holland if he needed a search warrant. Holland replied that he did not need a warrant, then opened the trunk and found over $5000 in cash and numerous pieces of expensive jewelry later estimated to be worth over $68,000.
 
 
 7
 Belton Platt filed a pretrial motion to suppress the items seized from his car based on his claim that he did not consent to a search of the trunk. The district court denied the motion, ruling that because the agents had probable cause to believe that Belton Platt's car contained cocaine, the fourth amendment permitted the agents to conduct a warrantless search of any portion of the vehicle where contraband could reasonably be located, including the trunk.
 
 
 8
 At trial, both Belton and Gordon Platt claimed that Watson had lied and denied their involvement in any drug transaction. They were convicted after a jury trial.
 
 
 9
 During the brothers' sentencing hearing, Charlotte Police Sergeant Richard Sanders testified about Belton Platt's involvement in an incident known as the "Piedmont Courts shootout." Sanders testified that immediately after this December 1985 incident, he took statements from two specific persons (whom he identified) implicating Belton Platt in the shootout. Sanders then offered to present similar statements from 12 other persons also implicating Belton Platt in that incident. Although Belton Platt was convicted of five counts of assault with a deadly weapon with intent to kill and one count of inciting a riot as a result of the Piedmont Courts incident, his convictions were overturned because of a procedural error and he was never retried.
 
 
 10
 In addition to Sanders' testimony, the government offered corroborating evidence to establish that Belton Platt was a major drug dealer. The government presented the testimony of agent Caylor, who testified that a woman whom he identified told him during an interview that she had frequently seen Belton Platt with large quantities of drugs and had sold drugs for him through April 1989. The government also presented the testimony of Charlotte Police Officer Calvin Kearney, who testified that he had been told by one of his proven and reliable confidential informants that Belton Platt was a drug kingpin who supervised 20 underlings.
 
 
 11
 Based on the preceding testimony, the district court found that Belton Platt had an "extensive drug trafficking history" and raised his offense level from 34 to 36, and his criminal history category from I to III. The district court then granted an upward departure and sentenced Belton Platt to a 290-month prison term. Gordon Platt received a sentence of 200 months.
 
 II
 
 12
 The first issue raised by Belton Platt is whether the district court improperly denied his pretrial motion to suppress evidence found during the search of his car. Probable cause is always required, whether or not the police have a search warrant. Illinois v. Gates, 462 U.S. 213, 238 (1983). Probable cause "is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. Federal agents may seize items which might be evidence of a defendant's drug dealing. United States v. Grandison, 783 F.2d 1152, 1156 (4th Cir.), cert. denied, 479 U.S. 845 (1986); United States v. Reed, 726 F.2d 339, 343 (7th Cir.1984).
 
 
 13
 Although the agents were looking for cocaine when they searched Belton Platt's car, it was reasonable for them to conclude that the jewelry and cash they discovered was circumstantial evidence which could be used to prove that Belton Platt was a drug dealer. In addition, the cash seized from the trunk corroborated Watson's claim that Belton Platt had sold cocaine a few hours earlier. Therefore, because the agents had probable cause to search Belton Platt's car, we dismiss this claim.
 
 
 14
 Belton Platt also claims that the district court erred by basing its upward departure on his heavy prior involvement in drug trafficking. Appellate courts should use a three-part test when reviewing a departure for reasonableness under 18 U.S.C. § 3742(e) by determining, first, whether the district court properly determined that the relevant factor was not adequately taken into account by the guidelines; second, whether the district court properly found that the factor existed; and finally, whether the district court properly found that the factor warranted a departure.[3] United States v. Summers, 893 F.2d 63, 66-67 (4th Cir.1990).
 
 
 15
 An aggravating factor which has been identified by the commission is per se proof of the existence of the requisite proper circumstance. Id. at 67. Here, the Sentencing Commission has expressly identified understatement of a defendant's criminal history category as a circumstance that may warrant departure. U.S.S.G. § 4A1.3. Therefore, we find the first prong of the test satisfied.
 
 
 16
 The second prong of the Summers test requires that we determine whether the district court properly found the existence of the disputed factor. Here, testimony by numerous witnesses established that Belton Platt was a major drug trafficker. Because we cannot say that this finding was clearly erroneous, the second prong of the test is also satisfied.
 
 
 17
 The final prong of the test requires us to determine whether the district court properly found that the factor warranted a departure. At sentencing, the district court may consider without limitation any information concerning the defendant's background, character, and conduct, unless otherwise prohibited by law. U.S.S.G. § 1B1.4. A defendant's conduct underlying a criminal charge which did not result in his conviction may be considered for sentencing purposes. See United States v. Talbott, 902 F.2d 1129, 1133 (4th Cir.1990); United States v. McKenley, 895 F.2d 184, 186 (4th Cir.1990). In addition, a trial court may properly consider hearsay evidence that the defendant has had an opportunity to rebut or explain. United States v. Terry, 916 F.2d 157, 160-161 (4th Cir.1990). Therefore, because we cannot say that the district court abused its discretion by departing upwards based on testimony from several witnesses establishing Belton Platt's prior involvement in drug trafficking, we must reject this claim as well.
 
 III
 
 18
 We now turn to the arguments raised by Gordon Platt on appeal. Gordon Platt's first claim is that his severance motion was improperly denied. Defendants properly joined together for trial should ordinarily be tried together, especially when one crime may be proven against the defendants on the same evidence. United States v. Pryba, 900 F.2d 748, 758 (4th Cir.), cert. denied, 59 U.S.L.W. 3292 (U.S.1990). Severance is only required when a joint trial would be so prejudicial as to result in the likelihood of a fundamental miscarriage of justice. Id. In addition, a co-defendant's rights may be adequately protected by an appropriate limiting instruction. United States v. Doherty, 867 F.2d 47, 63-64 (1st Cir.), cert. denied, 492 U.S. 918 (1989). Therefore, the fact that Gordon Platt may have played a less substantial role in the drug trafficking conspiracy than his brother did not mandate severance, especially in light of the fact that the district court carefully issued appropriate limiting instructions. Thus, this claim must be dismissed.
 
 
 19
 Gordon Platt's next claim is that the district court erred by denying his motion for a judgment of acquittal based on insufficient evidence. An appellate court considering a sufficiency of the evidence claim must decide whether, after viewing the evidence in the light most favorable to the government, a rational jury could have found each of the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Witness credibility lies within the exclusive province of the jury and is not to be assessed by a reviewing court. United States v. Saunders, 886 F.2d 56, 60 (4th Cir.1989).
 
 
 20
 Conspiracy to distribute an illegal substance requires the government to prove merely that the defendant knew the conspiracy's purpose and took some action indicating his participation. United States v. Crockett, 813 F.2d 1310, 1316 (4th Cir.), cert. denied, 484 U.S. 834 (1987). Theft of government property is essentially larceny against the government, requiring proof that the defendant possessed the criminal intent to steal, and that the government suffered an actual property loss. United States v. Coachman, 727 F.2d 1293, 1302 (D.C.Cir.1984).
 
 
 21
 The evidence here is sufficient to convict Gordon Platt of both charged offenses. Watson's testimony was clearly sufficient to convict him of the conspiracy charge. Watson's testimony, combined with physical evidence that the tape recorder and transmitter had been destroyed, was also clearly sufficient to convict Gordon Platt of participating in the theft of government property.
 
 
 22
 Gordon Platt also argues that the district court committed four separate errors when imposing his sentence. He first claims that the district court improperly imposed a two-level adjustment for obstruction of justice. Platt claims that he could not be convicted of theft under § 641 and receive a two-level enhancement for the same act--stealing and destroying the tape recorder and transmitter. The guidelines permit a two-level adjustment if the defendant attempted to impede or obstruct the administration of justice during an investigation, or if he attempted to destroy or conceal evidence. U.S.S.G. § 3C1.1.[4] The district court's finding that the disputed conduct was obstructive was a factual determination, which we must review under the clearly erroneous standard.[5] See United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989). Because we can not say the district court's determination here was clearly erroneous, we must dismiss this claim.
 
 
 23
 Gordon Platt next claims that the district court erred by refusing to grant him a two-level adjustment for his role as a minor participant. U.S.S.G. § 3B1.2. Platt claimed he was merely a drug courier who was not significantly involved in drug dealing. A district court's determination of whether a participant has a minor role is a factual question, which will be overturned only if clearly erroneous. Daughtrey, 874 F.2d at 217-219. Here, because Watson's testimony clearly established that Gordon Platt was more than a minor participant in the conspiracy, it cannot be said that this finding was clearly erroneous. Therefore, we dismiss this claim as well.
 
 
 24
 Gordon Platt next argues that the district court improperly imposed a two-level adjustment for physicial restraint of the victim during commission of the offense, claiming that Watson was never physically restrained by him or his brother prior to or during the events in question. An adjustment may be made if the defendant physically restrains the victim during commission of the offense. U.S.S.G. § 3A1.3. A guideline adjustment for physical restraint of the victim may be appropriate whenever the victim's freedom or liberty is restricted or limited by the use of force, even if the victim is not tied, bound, or locked up. See United States v. Stokley, 881 F.2d 114, 116 (4th Cir.1989).
 
 
 25
 Here, Belton Platt seized Watson's arm, then commanded Watson to accompany him and his brother, whom he knew was armed, to an undisclosed location. Moments later, both Platt brothers physically assaulted Watson and stole government property from him. We find that this conduct falls within the definition of "physically restrained" outlined in the guidelines and further discussed in Stokley. Therefore, we conclude that this claim is meritless.
 
 
 26
 Gordon Platt's final claim is that the district court improperly imposed a two-level adjustment for possessing a dangerous weapon during commission of the offense. The guidelines clearly permit the district court to impose such an adjustment. U.S.S.G. § 2D1.1(b). The district court made this adjustment based on Watson's trial testimony that Gordon Platt possessed this gun while he was engaged in activities furthering the drug conspiracy. Because we cannot say that the district court's factual determination, based on Watson's trial testimony, was clearly erroneous, we find no error here.
 
 
 27
 For all of the reasons discussed previously, the convictions and sentences are
 
 
 28
 AFFIRMED.
 
 
 
 [1]
 Watson disregarded the agents' instructions to leave the area
 
 
 [2]
 The next day, parts of the transmitter and recording tapes were found at the location where Watson said he was attacked
 
 
 [3]
 The Court reviews the district court's findings on the first prong under a standard approximating de novo review. The district court's findings on the second prong are reviewed under a clearly erroneous standard, while its findings on the third prong are reviewed for abuse of discretion. Summers, supra
 
 
 [4]
 This adjustment may be freely used to enhance any offense not on the short list of offenses which involve elements of obstruction. These offenses are contempt (§ 2J1.1), obstruction of justice (§ 2J1.2), perjury (§ 2J1.3), bribery of a witness (§ 2J1.8), and payment to a witness (§ 2J1.9)
 
 
 [5]
 The applicability of an adjustment to either raise or lower the offense level must be demonstrated by a preponderance of the evidence. United States v. Urrego-Linares, 879 F.2d 1234 (4th Cir.), cert. denied, 58 U.S.L.W. 3289 (U.S.1989) (No. 89-5653)