**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 95-5702

ABU ASHONTE ALI, a/k/a Marty
Boldin, a/k/a Marty Boldwin,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Robert G. Doumar, District Judge.
(CR-95-31)

Argued: June 6, 1996

Decided: July 30, 1996

Before WILKINSON, Chief Judge, MOTZ, Circuit Judge, and
CURRIE, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Robert Bryan Rigney, KNIGHT, DUDLEY, CLARKE &
DOLPH, P.L.C., Norfolk, Virginia, for Appellant. Janet S. Reincke,
Assistant United States Attorney, Norfolk, Virginia, for Appellee. **ON
BRIEF:** Helen F. Fahey, United States Attorney, Norfolk, Virginia,
for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A jury convicted Abu Ashonte Ali of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) and § 924(a)(2), and of possessing an unregistered firearm, in violation of 26 U.S.C. § 5861(d). Ali was sentenced to a total of 140 months imprisonment. He appeals, asserting multiple challenges to his convictions and sentences. We affirm.

I.

A Virginia state police officer, Officer Nick Pizzillo, attempted to stop and question Ali after noticing that Ali's car had a broken left taillight. Ali did not stop until he reached a motel, at which point he quickly left his car, leaving the driver's door open and permitting his car to roll back into Officer Pizzillo's car. As Ali exited the car and began walking toward the officer, Pizzillo drew his weapon and ordered Ali to stop and place his hands on the back of the car. Upon inquiry, Pizzillo learned that Ali was driving with a suspended license. Pizzillo also spotted a knife scabbard on the car floor under the driver's seat. A subsequent search uncovered a 12-gauge sawed-off shotgun in a black bag behind the front seat. The bag also contained a pawn receipt bearing Ali's name.

II.

First Ali contends that the district court erred in not dismissing the indictment because of alleged grand jury improprieties. He asserts that the presence of two unauthorized persons in the grand jury room violated Fed. R. Crim. P. 6(e) and requires dismissal of the indictment.

This contention is without merit. In United States v. Computer Sciences Corp., 689 F.2d 1181 (4th Cir. 1982), cert. denied, 459 U.S.

2

1105 (1983), we rejected a claim that five separate intrusions involving the entry of unauthorized persons in the grand jury room necessarily required dismissal. We noted that although grand jury proceedings should always remain inviolate, "perfection" is rarely possible. Id. at 1185. The critical question is whether there has been an "intrusion of significant duration" or a "showing of deliberate rule disregard by the government or prejudice to the defendant." Id.

In this case, the prosecutor had just begun to tell the jurors that she would be presenting a superseding indictment. After the prosecutor had explained what a superseding indictment was, a juror raised his hand and told her that two unknown persons were in the room. Those persons were promptly evicted. They had been misdirected to the grand jury room and innocently sat down. The prosecutor then called a magistrate and a hearing was conducted, at which the magistrate determined that one of the unauthorized persons was a witness for a separate grand jury matter and that the second person was accompanying the witness. The magistrate questioned the prosecutor, the grand jurors, and the unauthorized persons as to the extent of the information they heard in the grand jury room. All agreed that the unauthorized persons had heard no testimony, but only the prosecutor's introductory remarks.

At the conclusion of the hearing, the magistrate found that the unauthorized persons had innocently entered the grand jury room and that no prejudice had resulted. The district court subsequently affirmed the magistrate's findings. As in Computer Sciences, our review of the record indicates that this is a case "`absent demonstrable prejudice or substantial threat thereof' so that `dismissal of the indictment is plainly inappropriate.'" 689 F.2d at 1185 (citing United States v. Morrison, 449 U.S. 361, 365 (1981)).

III.

Ali next claims that the district court erred in not requiring the prosecution to provide him with manuals containing the policies and procedures of the Chesapeake Police Department, as he had requested in discovery. He contends that because Officer Pizzillo testified that proper procedure did not require the officer to report the fender-bender between himself and Ali, and another officer testified that

3

such accidents must be reported, the failure to provide the manuals denied Ali a chance to cross-examine on credibility. To the extent that this argument has been preserved, it is meritless.

When Ali made his discovery motion for the police procedures, the district court postponed ruling on the motion. The court stated that it would listen to the trial testimony and, if the manuals became relevant, would order the prosecution to provide them. During the trial, Ali never renewed his motion for the manuals nor did the district court ever rule that they had become relevant. We review district court discovery decisions for abuse of discretion. United States v. LaRouche, 896 F.2d 815, 826 (4th Cir.), cert. denied, 496 U.S. 927 (1990).

The district court did not abuse its discretion. Police departments have valid interests in keeping their internal policies and procedures secret. The court therefore did not err in refusing to supply the manuals to Ali until he could demonstrate their relevance. Nor did the court abuse its discretion in failing to find that the manuals had become relevant because (1) Ali never brought to the court's attention any perceived relevance and (2) the purported relevance Ali now argues to this court (credibility as to reporting accident requirements for police accidents) has minimal bearing on any material fact in this case.

IV.

Ali also asserts that his trial was delayed in violation of his rights under the Sixth Amendment and the Speedy Trial Act.

Ali was placed under arrest by state police officers on September 5, 1994. He was subsequently imprisoned in a state facility for violating his probation. On January 23, 1995, a federal complaint and federal arrest warrant were issued, charging him with being a convicted felon in possession of a firearm. On February 22, 1995, the grand jury returned a one-count indictment against Ali. On March 2, Ali was arraigned and trial was scheduled for May 8, 1995. On March 13, the grand jury returned a two-count superseding indictment, charging him with the two offenses at issue in this case. On March 22, Ali was rearraigned. The trial date, May 8, remained unchanged.

4

As to Ali's Sixth Amendment challenge, the standard this court applies is well-settled. We must balance the following factors: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) the prejudice defendant suffered. See United States v. Thomas, 55 F.3d 144, 148 (4th Cir. 1995) (citing Doggett v. United States, 505 U.S. 647, 651 (1992)), cert denied, ___ U.S. #6D6D 6D#, 116 S. Ct. 266 (1995). Here, thirty days elapsed between issuance of the warrant and the initial indictment; and two and one-half months between the initial indictment and the trial.

This delay constitutes no violation of Ali's constitutional right to a speedy trial. First, the relatively short time periods involved here do not come close to being uncommonly long. Typically, not until a year has passed do courts presume sufficient prejudice from delay to warrant a constitutional speedy trial inquiry. See Thomas, 55 F.3d at 149 (citation omitted). The second factor is not significant because when such a short period of delay is at issue, the reason for the delay becomes irrelevant. The third factor weighs against Ali; no evidence indicates that Ali ever asserted his right to a speedy trial. Finally, Ali was incarcerated in the state prison throughout the delay period, therefore his liberty interest has not been significantly affected, nor has he shown any other prejudice resulting from the delay.

As to Ali's Speedy Trial Act claim, he appears to allege that the time period between his arrest by state officers and his federal indictment violated the Act. This argument was disposed of in United States v. Iaquinta, 674 F.2d 260, 264 (4th Cir. 1982), in which we held that the time period for Speedy Trial Act purposes does not begin until a federal arrest takes place. Accordingly, Ali's state arrest did not trigger his statutory right to a speedy trial under federal law. See 18 U.S.C. § 3161 et seq. The thirty day delay between the issuance of the federal warrant and the indictment in federal court was not improper; Ali's rights under the Speedy Trial Act were not violated.

V.

Next, Ali contends that the district court erred in permitting the jury to hear that he had used several "alias" names. He maintains that because he had legally changed his name, it was prejudicial for the

5

jury to hear about his aliases. Permitting the jury to hear of the aliases was not error. Ali's aliases were relevant in proving that the car he drove belonged to him. Although Ali denied ownership of the car, various documents found in the car referred to his aliases. Since the aliases were material to the contested issue of ownership or possession of the car (and gun), the court did not err in denying Ali's motion to strike them.

VI.

Additionally, Ali asserts that the district court erred in denying his motion to suppress evidence taken from his car. The district court held a lengthy suppression hearing during which four witnesses testified, including two police officers and Ali himself. At the conclusion of the hearing, the court denied the suppression motion. First, the court found that the broken taillight, a violation of traffic laws, provided Officer Pizzillo with justification for the initial stop. See United States v. McDonald, 61 F.3d 248, 254 (4th Cir. 1995) (traffic violation may provide a basis for an investigatory stop). Ali does not appear to challenge this finding on appeal.

What he does challenge is the legitimacy of the resulting search of his car. At the suppression hearing, Officer Pizzillo testified that after he had ascertained that Ali's license was suspended, and had spotted and confiscated the scabbard containing the "five or six inch bladed commando-style knife," he asked Ali if he had "any more surprises." Ali responded, "No, it's not my car." The officer then asked if Ali would mind if the officer "took a look" in the car and Ali said, "the car is not mine. You can look all you want." Ali testified that he was never asked to consent to a search, but he corroborated the officer's testimony regarding his statement that the car was not his.

The district court carefully considered this evidence and made the following findings:

> Given the defendant's extensive history as a felon, the court does not assign credibility to the defendant's testimony. In fact, the court finds the defendant's testimony to be incredible, and for that reason the court credits the testi-

6

> mony of the officer, and the officer says the defendant gave him permission to search the vehicle.
>
> Based upon the officer's testimony the defendant gave him permission to search the vehicle and the defendant's testimony in part which corroborates the officer's testimony, it is the court's finding that the defendant in this case gave Officer Pizzillo consent to search the vehicle.
>
> The court in part concludes this because it appears in saying the vehicle was not his, the defendant was trying to provide some excuse for what he knew the officer would find in that particular vehicle. So, for that reason the court finds that this was a consensual search and that the evidence should not be suppressed.

Thus the court decided to credit the police officer's testimony rather than Ali's and found that Ali had consented to the search of the car. Because a consensual search does not violate the Fourth Amendment, the fruits of such a search are generally admissible. See United States v. Lattimore, No. 94-5915, ___ F.3d #6D 6D6D#, 1996 WL 344878, at *3 (4th Cir., June 25, 1996) (en banc) (citing Schenckloth v. Bustamonte, 412 U.S. 218, 219 (1973)). Thus the district court did not err in denying Ali's suppression motion.

VII.

Ali challenges the district court's refusal to exclude from the jury's consideration several items obtained from the car. These items included various letters and cards relating to Ali's prior convictions. Ali contends that Fed. R. Evid. 403 prohibits admission of this evidence.

Under Rule 403, a district court may exclude evidence if "its probative value is substantially outweighed by the danger of unfair prejudice." We review the district court's evidentiary rulings for abuse of discretion. See United States v. Whittington, 26 F.3d 456, 465 (4th Cir. 1994). A district court's Rule 403 decision will not be overturned except under "the most extraordinary of circumstances, where that

7

discretion has been plainly abused." <u>United States v. Simpson</u>, 910 F.2d 154, 157 (4th Cir. 1990) (citations and internal quotation omitted).

In this case, the papers in the car were relevant to the extent that they showed that the car containing the shotgun was Ali's car, and not, as he had claimed, his girlfriend's. Therefore, the documents were plainly probative of a significant issue in the case. The documents were also prejudicial, in that they related to Ali's prior criminal history. Although redaction of the documents would have been warranted on this basis, defense counsel never requested that the documents be redacted. Rather, he urged the court to exclude the documents altogether and inform the jury that the police found letters or documents addressed to and written by Ali. The government had an interest in displaying to the jury the number and variety of the documents found bearing Ali's name and the aliases, and so the district court did not err in rejecting Ali's proposed remedy. Moreover, the court repeatedly cautioned the jury that the documents were admitted only for the purpose of showing Ali's control of the vehicle and for no other purpose. Such cautionary instructions are due significant weight in our assessment of whether the evidence was overly prejudicial. <u>See United States v. Hadaway</u>, 681 F.2d 214, 219 (4th Cir. 1982). Since there was no request for redaction and the court properly admonished the jury as to the limited purpose of the documents, the court did not abuse its discretion in admitting the documents.

VIII.

Next, Ali contends that the district court erred in permitting the government to introduce one letter from the car because the government had not provided proper evidence to show the chain of custody of the letter. At trial, however, Ali objected to admission of the letter based on Rule 403 and not because of any perceived problem with the chain of custody. Failure to raise the chain of custody objection deprived the court of the opportunity to rule on the chain of custody. As such, the argument is waived on appeal and may be reviewed only for plain error. <u>See United States v. Olano</u>, 507 U.S. 725 (1993).

The chain of custody rule is simply a variation of the rule requiring proper authentication of evidence. <u>United States v. Howard-Arias</u>,

8

679 F.2d 363, 366 (4th Cir.), <u>cert. denied</u>, 459 U.S. 874 (1982). Even if the letter had not been properly authenticated, this defect would not constitute plain error because Ali has failed to allege, let alone prove, that he was prejudiced by its admission.

IX.

Ali also challenges the district court's decision to admit evidence of "uncharged" bad conduct.

First, he contends that the court should not have permitted a police officer to testify that, on another occasion, Ali was arrested while driving the same car. The prosecution offered this evidence to show that Ali had previously possessed the car to counter Ali's claim that the car (and weapon found in it) were not his. Thus, this evidence was not offered to show Ali's character but rather to identify Ali as being in possession of the car and the weapon found therein. As such, the testimony was admissible under Rule 404(b).

Second, Ali claims that the court should not have permitted the government to introduce various items found in his car. Ali claims these items, described as burglary tools, were irrelevant and prejudicial. Officer Pizzillo testified that he found numerous items in Ali's trunk, including cameras, radios, and pagers. When he began to explain why he believed these items were suspicious, defense counsel objected, arguing that the officer's suspicions were based on pure "speculation." The prosecution responded that it would be happy to go into the officer's qualifications as an expert. The court then told the prosecutor to develop the officer's qualifications. The officer testified to his qualifications and later revealed that numerous "burglary tools" were found in Ali's car. Seemingly satisfied, defense counsel raised no further objections.

It is only now on appeal that Ali raises an objection to the burglary tools as evidence of prior bad acts or uncharged criminal conduct. The failure to raise this objection before the trial court constitutes a waiver of the objection, reviewed for plain error. In view of the abundant other evidence presented by the government establishing Ali's guilt of the charged firearm offenses, any error in admitting evidence regarding the "burglary tools" was harmless.

9

X.

Ali maintains that the district court erred in permitting the government to introduce evidence at trial that was not disclosed to the defense until the second day of trial. This evidence, which the government claims was discovered the night of the first day of trial, consisted of towing records. The records were introduced to show Ali's control of the car. We review the district court's decision to admit this evidence for abuse of discretion. The court allowed Ali and his counsel some time to review the new evidence before its introduction. Fed. R. Crim. P. 16(c) simply requires that a party, who discovers additional evidence, "promptly notify" the other party or the court. Ali does not argue that the government purposely withheld this evidence or that it was not, in fact, newly discovered. We therefore cannot conclude that the district court abused its discretion in admitting the newly discovered evidence.

XI.

Next, Ali contends that the district court erred in denying his motion for acquittal because the government did not provide sufficient evidence to satisfy the "commerce" requirement of 18 U.S.C. § 922(g). This statute makes it illegal for a felon to "ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate and foreign commerce." Ali relies on the Supreme Court's recent decision in United States v. Lopez, ___ U.S. ___, 115 S. Ct. 1624 (1995), and on United States v. Bass, 404 U.S. 336 (1971).

Ali's apparent constitutional challenge to the statute, based on Lopez, must fail. In Lopez, the Supreme Court struck down a statute prohibiting possession of a firearm near a school, concluding that the statute had "nothing to do with `commerce'" and contained "no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." Lopez, ___ U.S. at ___, 115 S. Ct. at 1630-31. The statute in question in this case, § 922(g), in contrast, does contain such a jurisdictional element because it applies only to firearms having"an explicit connection with or effect on interstate commerce." Id. at 1631. Lopez

10

therefore does not affect previous precedent upholding the statute's constitutionality. See, e.g., Scarborough v. United States, 431 U.S. 563 (1977); United States v. Bass, 404 U.S. 336 (1971).

In a related challenge, Ali contends that the evidence presented in this case, which showed that the firearm had once traveled in interstate commerce (from its place of manufacture in Massachusetts to Ali's possession in Virginia) was insufficient to show that he possessed the weapon in interstate commerce. Ali bases this contention on language taken from the Supreme court's opinion in Bass, in which Justice Marshall stated that the commerce connection can be shown in a variety of ways. Justice Marshall offered, as an example, that the government could establish the commerce nexus with regard to "possession" charges by showing that:

> at the time of the offense the gun was moving interstate or on an interstate facility, or if the possession affects commerce. Significantly broader in reach, however, is the offense of "receiv[ing] . . . in commerce or affecting commerce," for we conclude that the government meets its burden here if it demonstrates that the firearm received has previously traveled in interstate commerce.

Bass, 404 U.S. at 350 (alteration in original). From this language, Ali concludes that possessing a firearm (as opposed to receiving one) requires more than proof that the firearm had once traveled in interstate commerce.

Ali's precise argument was rejected in another opinion authored by Justice Marshall, Scarborough v. United States , 431 U.S. 563 (1977). In Scarborough the Supreme Court "reconsidered" the prior distinction between the proof required for possessing and receiving. Id. at 575 n.11. The Court held that there was "no indication that Congress intended to require any more than the minimal nexus that the firearm have been, at some time, in interstate commerce." Id. at 575. Because in the present case, the government offered such proof, Ali's argument fails.

XII.

Ali contends that his convictions should be overturned for lack of sufficient evidence. Viewing the evidence in the light most favorable

11

to the government, as we must, we conclude that the evidence was clearly sufficient to establish Ali's guilt of both convictions. Ali was convicted of being a felon in possession of a firearm and of possessing an unregistered firearm. He concedes that he is a convicted felon; there is abundant evidence in the record that an unregistered sawed-off shotgun was found in a car Ali possessed, while he was driving the car. Accordingly, his contention of insufficient evidence to sustain his convictions is without merit.

XIII.

Ali asserts that the district court erred in failing to dismiss the indictment because Officer Pizzillo's testimony was too incredible to be believed. There was nothing inherently incredible about the officer's testimony. In any event, credibility determinations are not within the province of this court. See United States v. Johnson, 55 F.3d 976, 979 (4th Cir. 1995).

XIV.

Finally, Ali challenges his sentence. He contends that because the two counts with which he was charged were grouped under the Guidelines, and because the maximum sentence for each count taken alone, was 120 months, he should not have been sentenced to 140 months for the grouped counts.

The district court grouped the two counts together because they encompassed the same conduct. The court then determined that the appropriate offense level for the grouped counts was 26. See United States Sentencing Commission, Guidelines Manual , § 2K2.1(a)(1) (Nov. 1994). Ali's extensive criminal history placed him in category VI. The guideline range for a defendant with an offense level of 26 and a criminal history category of VI is 120-150 months. USSG Ch.5, Pt. A. From that range the court determined that the proper "total punishment," USSG § 5G1.2, comment., was 140 months.

Once the district court has determined the "total punishment," the court must calculate the statutory maximum punishment permitted for each count. Here, the statutory maximum that could be imposed on

each count was 120 months. The commentary to the Guidelines notes that usually the "total punishment" will not exceed the statutory maximum punishment. Id. However, "[i]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment." USSG § 5G1.2(d). Accordingly, to reach the desired"total punishment" of 140 months, the court imposed the statutory maximum, 120 months, on one of the counts against Ali, and, on the second count, imposed 20 months to run consecutively, while the remaining 100 months ran concurrently with the initial 120 month sentence.

This sentence was consistent with United States v. Watford, 894 F.2d 665, 669 (4th Cir. 1990), in which we noted that sentences for two counts grouped together should run concurrently,"except to the extent necessary to produce a sentence within the appropriate guideline range." See also United States v. Young , 916 F.2d 147, 151-52 (4th Cir. 1990) (sometimes "grouped counts" can merit consecutive sentences where the maximum on the highest individual count is less than the total punishment). The district court's sentence in this case also comports with similar sentences in other circuits. See United States v. Mizrachi, 48 F.3d 651 (2d Cir. 1995); United States v. Kings, 981 F.2d 790 (5th Cir.), cert. denied, 508 U.S. 953 (1993). Cf. United States v. Joetzki, 952 F.2d 1090 (9th Cir. 1991).

Ali's attempt to use this court's decision in United States v. Talbott, 902 F.2d 1129 (4th Cir. 1990), to support his theory that his sentence could not exceed the maximum for either of the counts for which he was convicted, is unavailing. In Talbott, the district court had sentenced the defendant to consecutive ten year sentences for possession and manufacture of a single firearm. We held that such a "pyramiding" of sentences was not permissible. Id. at 1133. In the typical case, that is true. It is only in the unusual case, such as the one here, where the total allowable punishment under the Guidelines exceeds the statutory maximum, that the court may impose consecutive sentences to reach the chosen "total punishment."

13

For the foregoing reasons, Ali's convictions and sentences are

AFFIRMED.

14