**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Carl SIMPSON, a/k/a Shawn Davidson,
Defendant–Appellant.**

No. 89–5671.

United States Court of Appeals,
Fourth Circuit.

Argued June 8, 1990.

Decided Aug. 7, 1990.

Before ERVIN, Chief Judge, HALL, Circuit Judge, and MICHAEL, United States District Judge for the Western District of Virginia (sitting by designation).

K.K. HALL, Circuit Judge:

Carl Simpson, a/k/a Shawn Davidson, appeals his convictions for unlawfully possessing a firearm, in violation of 18 U.S.C. § 922(g), and attempting to board an aircraft with a concealed weapon, in violation of 49 U.S.C. § 1472(l). Finding that the trial court committed prejudicial error in admitting certain evidence, we reverse.

## I.

On April 22, 1989, Simpson, along with three companions, entered the North Terminal of Washington National Airport, headed for the gate to the Pan Am shuttle flight to New York City. To reach the gate, the group had to pass through a security checkpoint consisting of a magnetometer and an x-ray machine. The rest of the group passed through the checkpoint without incident; Simpson, however, was not so fortunate. To get through the magnetometer, he was forced to empty his pockets, revealing over $450 in cash. An x-ray of two shopping bags that he was carrying revealed a suspicious looking metallic object. Security personnel emptied the bags and searched the contents. They discovered a fully loaded and cocked .25 caliber Beretta pistol wrapped in red cloth and tucked in the pocket of a pair of pants. Unaware that the gun had been discovered, Simpson admitted that the shopping bags were his. His companions quickly left and were eventually located at the departure gate for the New York shuttle. They were briefly questioned and then released. Simpson was arrested.

Besides the currency, a post-arrest search produced a small bottle of amyl nitrate ("rush"). A later search uncovered a trace amount of suspected marijuana residue in one of Simpson's jacket pockets.[1]

Charles James Maxfield, argued, Dunn, McCormack, MacPherson & Maxfield, Fairfax, Va., for defendant-appellant.

Paul George Cassell, argued, Asst. U.S. Atty., Alexandria, Va. (Henry E. Hudson, U.S. Atty., Marcus J. Davis, Sp. Asst. U.S. Atty., Alexandria, Va., on brief), for plaintiff-appellee.

---

1. The amount of this residue was so small that it could not be field tested. An FBI agent testified at trial that the residue was "a greenish-brown leafy substance containing some stems and also some seeds" that was "consistent with

Upon questioning, Simpson told police that his name was Shawn Simpson, that he was born in Brooklyn, New York, and that he was a juvenile. Shortly thereafter, police determined his true identity to be Carl Simpson, an adult citizen of Jamaica.

In pretrial proceedings, Simpson sought to exclude from trial, *inter alia*, his Jamaican citizenship, the marijuana residue, the bottle of rush, and the currency. He argued that this evidence had little to do with the crimes charged, proof of which hinged on his knowing possession of a gun, and its admission would be unfairly prejudicial. The government contended that the evidence was highly probative because it would indirectly prove that appellant was in knowing possession of a gun by showing that he met the drug courier profile[2] and that drug couriers frequently carry guns for protection. The district court excluded the bottle of rush, but ruled that Simpson's Jamaican citizenship, the money, and the marijuana residue were admissible.

At trial, Simpson's defense was that someone else planted the gun in his shopping bag and that, even though he was entering the Pan Am shuttle gate area, he never intended to board a plane. This defense was not without support. At the time of his arrest, Simpson did not have a plane ticket and, other than the two shopping bags, he was carrying no luggage. The prosecution successfully pursued its drug courier theory of the case, introducing all of the disputed evidence. Over Simpson's renewed objection, an FBI agent offered expert testimony on the *modus operandi* of drug traffickers, and his opinion that Simpson's possession of a relatively large amount of cash, a recreational drug (marijuana), and, of course, a gun, all fit the drug courier profile. He further testified that New York was a source city for narcotics, that couriers typically travel by

air, and that they often purchase their tickets with cash. An airport security officer also testified that shuttle tickets can be purchased at the gate. On cross-examination, the agent admitted that there was no substantive evidence of Simpson's having ever engaged in drug trafficking. In its instructions to the jury, the trial court cautioned that the drug courier evidence should only be considered as it pertained to the gun charges. Simpson was convicted on both counts.

At sentencing, Simpson moved for acquittal on the 49 U.S.C. § 1472(*l*) conviction, contending that there was insufficient evidence to show an attempt to board an aircraft. The district court denied the motion and Simpson was sentenced to two concurrent 57–month sentences. This appeal followed.

## II.

Appellant challenges the trial court's admission into evidence of his Jamaican citizenship, the currency, and the testimony concerning the marijuana residue and the drug courier profile. He argues that, without any substantive proof of drug trafficking activity on his part, the government used this evidence to depict him as a drug courier and to prejudice the jury on the only contested issues of the case—his knowing possession of the gun and his attempt to board an aircraft. Appellant also contends that there was insufficient evidence to convict him of attempting to board an aircraft with a concealed weapon. We take up these issues in turn.

 We analyze appellant's challenge to the admission of the disputed evidence under Fed.R.Evid. 403:[3]

Although relevant, evidence may be excluded if its probative value is substan-

---

residue of marijuana." The substance itself was not admitted into evidence.

**2.** "A drug courier profile is 'an informally compiled abstract of characteristics thought typical of persons carrying illicit drugs.'" *United States v. Harrison,* 667 F.2d 1158, 1161 n. 4 (4th Cir.), *cert. denied,* 457 U.S. 1121, 102 S.Ct. 2937, 73 L.Ed.2d 1335 (1982), *quoting United States v.*

*Mendenhall,* 446 U.S. 544, 547 n. 1, 100 S.Ct. 1870, 1873 n. 1, 64 L.Ed.2d 497 (1980).

**3.** Appellant also challenges the admission of the drug courier and marijuana residue testimony as an abuse of discretion under Fed.R.Evid. 404(b). Because we find Rule 403 dispositive, we do not reach this issue.

tially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

As we have repeatedly held, the decision whether to admit evidence under this rule is one left to the sound discretion of the trial court. We will not upset such a decision except under "the most 'extraordinary' of circumstances," where that discretion has been plainly abused. *United States v. Heyward,* 729 F.2d 297, 301 n. 2 (4th Cir. 1984), *cert. denied,* 469 U.S. 1105, 105 S.Ct. 776, 83 L.Ed.2d 772 (1985) (quotation omitted), *cited in United States v. Tindle,* 808 F.2d 319, 327 n. 6 (4th Cir.1986), *later appeal,* 860 F.2d 125 (4th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 3176, 104 L.Ed.2d 1038 (1989). Such an abuse occurs only when it can be said that the trial court acted "arbitrarily" or "irrationally" in admitting evidence. *United States v. Masters,* 622 F.2d 83, 88 (4th Cir.1980); *Garraghty v. Jordan,* 830 F.2d 1295, 1298 (4th Cir.1987).

■ This broadly deferential standard makes clear that we are reluctant to question a trial court's judgment under Rule 403, and for good reason. "Trial judges are much closer to the pulse of a trial than ... [we] can ever be [and] 'broad discretion' is necessarily accorded them." *Tindle,* 808 F.2d at 327 n. 6, *quoting United States v. Juarez,* 561 F.2d 65, 71 (7th Cir. 1977); *see also Morley v. Cohen,* 888 F.2d 1006, 1011 (4th Cir.1989) (appellate review of Rule 403 decision demands judicial self-restraint). Nonetheless, when, after review of the record, we are left with a firm conviction that an abuse of discretion has occurred that has worked to the prejudice of a defendant, we must reverse. We find that the trial court's admission of the testimony concerning the drug courier profile and the marijuana residue ("drug courier" testimony) was such an abuse of discretion.

In reaching this conclusion, we are mindful of the strong preference for admitting probative evidence, and that, in reviewing the trial court's decision, we must "look at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *Mullen v. Princess Anne Volunteer Fire Co., Inc.,* 853 F.2d 1130, 1135 (4th Cir. 1988). In this regard, the government argues that the probative value of the drug courier testimony is high because it shows that appellant meets the drug courier profile and, therefore, tends to show that he is a courier. Consequently, the government maintains it also tends to show that appellant might have had a motive for carrying a gun. Simply to state this argument reveals its tenuity.

When coupled with other corroborating circumstances, the drug courier profile is a powerful investigative tool used, *inter alia,* to develop reasonable suspicion to support a *Terry* stop (*Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)) of a suspected drug trafficker. *See Reid v. Georgia,* 448 U.S. 438, 439–41, 100 S.Ct. 2752, 2753–54, 65 L.Ed.2d 890 (1980). However, proof that a person fits the profile, unsupported by evidence of drug trafficking, proves nothing.[4] *United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 1586, 104 L.Ed.2d 1 (1989). As the Supreme Court has noted, the profile easily fits innocent travellers as well as drug traffickers. *Reid,* 448 U.S. at 441, 100 S.Ct. at 2754; *Sokolow,* 109 S.Ct. at 1586. Thus, the government's claim as to the probative value of this testimony is grossly exaggerated. If there were any evidence linking appellant to the drug trade, the probative value of this testimony might more closely resemble the government's representations. The government, however, has come forth with no such evidence.[5] Consequent-

---

**4.** Appellant does not argue that this evidence fails to meet the threshold definition of "relevant evidence" under Fed.R.Evid. 401. Consequently, we assume that the drug courier testimony meets this liberal requirement.

**5.** This is a distinguishing point between this case and *United States v. Hattaway,* 740 F.2d 1419, 1425 (7th Cir.), *cert. denied,* 469 U.S. 1089, 105 S.Ct. 599, 83 L.Ed.2d 708 (1984); *United States v. Harrell,* 737 F.2d 971, 977–78 (11th Cir.1984), *cert. denied,* 470 U.S. 1027, 105 S.Ct.

ly, the probative value of this evidence in this gun charge trial is indeed limited.

This *de minimis* relevance was substantially outweighed by the highly prejudicial impact that the insinuation of drug crimes had in this trial. Of course, all relevant evidence is prejudicial; Rule 403 is concerned only with limiting "unfair" prejudice. *Mullen*, 853 F.2d at 1134. In *Mullen*, we characterized "unfair prejudice" as "the possibility that the evidence will excite the jury to make a decision on the basis of a factor unrelated to the issues properly before it." *Id.* The drug courier testimony presented precisely this danger. The relevant issues in dispute at appellant's trial were his knowing possession of a gun and his intent to board the shuttle to New York. The drug courier testimony had very little probative value to offer on these issues while the government made appellant's status as a drug courier the centerpiece of its case. Under these circumstances, the inherent risk of inflaming the jury, and of misleading it into focusing on the government's unsubstantiated and uncharged allegations of drug crimes, was unacceptably high. The government's use of the drug courier profile at trial transformed this powerful tool of law enforcement into an instrument of unjust accusation. Our review of the record leaves us firmly convinced that the trial court abused its discretion in admitting the drug courier testimony.

## III.

■ The government argues that in the face of the convincing evidence of appellant's guilt and the trial court's limiting instruction, the error in admitting this evidence was harmless. We disagree. To be sure, errors under Rule 403 are subject to the harmless error test: "whether it is probable that the error could have affected

the verdict reached by the particular jury in the particular circumstances of the trial." *United States v. Morison*, 844 F.2d 1057, 1078 (4th Cir.), *cert. denied*, 488 U.S. 908, 109 S.Ct. 259, 102 L.Ed.2d 247 (1988). However, we find such a probability here. The thrust of the government's case was that appellant was an armed drug courier en route to the source city of New York. Our ruling under Rule 403 eviscerates this theory of the case entirely. Appellant's guilt on the gun charges must be determined absent unfounded accusations of drug trafficking. We have no difficulty concluding that the trial court's error, which resulted in the entire trial being based on this erroneous and prejudicial premise, probably had an effect on the jury's verdicts. Accordingly, we reverse these convictions and remand for further proceedings.

## IV.

■ We agree with the government, however, that appellant's challenge to the evidence of his Jamaican citizenship and the substantial amount of cash he was carrying at the time of his arrest is meritless. Removed from the drug courier context in which these facts were originally introduced, they easily pass Rule 403 muster. Both are highly relevant. The money shows that appellant had the means to purchase a ticket to board the Pan Am shuttle. Appellant's Jamaican citizenship may show a manifestation of his consciousness of guilt when he lied about his true identity. *United States v. Kalish*, 690 F.2d 1144, 1155 (5th Cir.1982), *cert. denied* 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983). Likewise, neither is unfairly prejudicial. There is nothing unfair about showing that appellant had the financial means to attempt to board the plane or in showing that he lied about his identity when caught with

1392, 84 L.Ed.2d 781 (1985), the cases relied upon by the government. In both cases, the trial court let in evidence of the practices and customs of a motorcycle gang in a trial of known gang members and affiliates. Here there is simply no similar evidence that appellant is a drug courier or that links him in any way to the drug trade.

The government's analogy fails in at least one other respect. Unlike motorcycle gangs, drug couriers are not a cognizable group with unifying customs and codes of conduct that guide the way they operate. Thus, even if there were some corroborative proof that appellant was a drug courier, the government's reliance on *Hattaway* and *Harrell* would be misplaced.

the gun in his possession. Upon retrial, if the government again seeks to introduce this evidence, Rule 403 does not stand in its way.

### V.

Lastly, even though we reverse appellant's convictions on Rule 403 grounds, it is still necessary to reach his claim of insufficient evidence of an attempt to board an aircraft. As the Supreme Court made clear in *Burks v. United States*, 437 U.S. 1, 18, 98 S.Ct. 2141, 2150–51, 57 L.Ed.2d 1 (1978), if he were to prevail on this claim, the double jeopardy clause would bar his retrial on the charge of violating 49 U.S.C. § 1472(*l*). In *Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988), the Court held that this bar does not arise unless all the evidence considered by the jury, both admissible and inadmissible, is insufficient to support its verdict. *See also Palmer v. Grammer*, 863 F.2d 588, 593–94 (8th Cir.1988). Thus, in assessing the evidence of appellant's guilt, we must consider the erroneously admitted drug courier testimony. Further, we must find the evidence sufficient if any rational trier of fact could have reached the same conclusion as did appellant's jury. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The government's case easily passes this test.

Even absent the improper drug courier evidence, the government showed that: appellant is a resident of the New York City area; he was apprehended while en route to the departure gate for the Pan Am shuttle to New York; he was carrying sufficient cash to purchase a shuttle ticket; after his arrest, the group he was travelling with went on to the shuttle's departure area; and appellant lied about his true identity. Taken in the light most favorable to the government, this evidence is sufficient to show an attempt to board the shuttle. Thus, there is no double jeopardy bar to appellant's retrial on the 49 U.S.C. § 1472(*l*) charge.

### VI.

In sum, we find that the trial court erred under Fed.R.Evid. 403 in admitting the drug courier testimony and that this error was not harmless. Accordingly, we reverse these convictions and remand for further proceedings.

REVERSED AND REMANDED.