968 F.2d 1212
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Robert C. GATES, JR., Defendant-Appellant.
 No. 91-5680.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 6, 1992
Decided: July 9, 1992
 
 Argued: Thomas Lee Hunter, Hampton, Virginia, for Appellant.
 Paul G. Cassell, Special Assistant United States Attorney, Norfolk, Virgini a, for Appellee.
 ON BRIEF: Richard Cullen, United States Attorney, Arenda L. Wright Allen, Assistant United States Attorney, Norfolk, Virginia, for Appellee.
 Before ERVIN, Chief Judge, CHAPMAN, Senior Circuit Judge, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Robert C. Gates, Jr., a resident of New York, stands convicted on two counts of making false statements to deceive a firearms dealer in Hampton, Virginia, in violation of 18 U.S.C. § 922(a)(6) and on two additional counts of making false statements in a firearms record in violation of 18 U.S.C. § 924(a)(1)(A). He received a sentence under the United States Sentencing Guidelines of 24 months imprisonment plus certain monetary fines and costs of prosecution. His sentence of 24 months included an upward departure of four months, because he had purchased a total of 34 handguns in the two incidents covered by the indictment, and an upward departure of 10 months, because one of the handguns, which he had purchased in Virginia, was used in a drug related kidnapping near Gates' home in New York City. These upward departures were made under § 2K2.1 of the 1988 guidelines upon a finding by the district court that the number of weapons purchased and the use of one of the weapons in a kidnapping were aggravating circumstances not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.
 
 
 2
 Gates appeals, claiming error by the district court (1) in denying his motion for a continuance made on the morning of trial, (2) in the admission of evidence of a prior illegal firearms purchase, (3) in applying a four month upward departure from the guideline range because of the number of weapons purchased, and (4) in applying a ten month upward departure from the guideline range because one of the weapons was used in a drug related kidnapping in New York City. Finding no merit to any of these exceptions, we affirm.
 
 I.
 
 3
 The evidence established that on August 12, 1988, and again on August 19, 1988, a black male, six feet four inches tall and weighing 280 pounds, visited Epstein's Pawn Shop in Hampton, Virginia. He identified himself as Robert Gates and displayed a Virginia driver's license with number sqf-vj-lbll which gave his name and an address of Route 1, Box 646, Lacross, Virginia, 28935. On his first visit to Epstein's Pawn Shop, Gates purchased 14 inexpensive handguns, and on his second visit, one week later, he purchased 20 inexpensive handguns. In completing the federally required ATF Form 4473, Gates used the Lacross, Virginia, address, which was shown to be fictitious.
 
 
 4
 Phillip Epstein and Brian Epstein, who had sold the weapons to Gates, were unable to identify him as the purchaser from a series of photographs submitted to them six months after the purchases. However, the prosecution called John King, owner of King's Gun Shop in South Hill, Virginia. Prior to admitting King's testimony, the court heard extensive arguments on whether evidence of a firearms purchase at King's Gun Shop was admissible under Federal Rule of Evidence 404(b). The trial judge found this evidence to be admissible under Rule 404(b) to prove the identity of the perpetrator of the crime and to establish a false exculpatory statement made by Gates. The trial court also found that the probative value of this testimony outweighed any possible prejudicial effect.
 
 
 5
 King testified that on July 29, 1988, a black male, six feet four inches tall and weighing approximately 280 pounds, came into his shop and identified himself as Robert Gates. This individual purchased a handgun and used the same Virginia driver's license number kfx-ub-zwigfor identification purposes. King identified the appellant Gates as the individual who had made this purchase.
 
 
 6
 Gates was convicted of all four counts in the indictment, and received a sentence of 24 months imprisonment on each count of conviction, with the sentences to run concurrently with one another.
 
 
 7
 At the time Gates was arraigned on May 23, 1991, he received court appointed counsel, and a trial date of July 23, 1991, was set. Prior to trial the United States made a request of the defendant that certain stipulations of uncontroverted matters be entered into, but the defendant made no response. On the morning of trial as the district judge was beginning to question prospective jurors, defense counsel requested a continuance and stated that just moments before the jury venire was brought into court, Gates had informed his attorney that he wished to hire a new attorney. He stated that a few days earlier Gates had received a settlement of approximately $18,000 in a civil action and that these funds would be used to hire a different attorney. No claim was made that appointed counsel was not competent to proceed with the defense.
 
 
 8
 The government opposed the motion for continuance and advised the court that it had subpoenaed a number of witnesses from considerable distances because of the defendant's failure to stipulate uncontroverted matters. The records custodian from Citibank had been subpoenaed from South Dakota, three witnesses were present from New York City, one from Washington, D. C., another from South Hill, Virginia, another from Brodnax, Virginia, and one from the Eastern Shore of Virginia. After hearing argument, the court ruled that the motion would be granted upon the condition that Gates, in his improved financial circumstances, reimburse the court for the cost of bringing the jurors to court, for the cost of court-appointed counsel, and reimburse the United States for reasonable travel expenses in bringing its out-of-town witnesses to court. Gates indicated he was unwilling to bear this expense, and the trial proceeded.
 
 II.
 
 9
 Appellant contends that the denial of his motion for a continuance, and the conditioning of any grant of continuance upon his reimbursement of court costs, was an abuse of discretion, because it conditioned the continuance upon his agreeing to forfeit his property prior to any finding of guilt. He also claims that this denied him his Sixth Amendment right to counsel of his own choosing.
 
 
 10
 Under the circumstances, the district court did not abuse its discretion in conditioning the grant of a continuance upon reimbursement of out-of-pocket expenses incurred by the government. Abuse of discretion is " 'unreasoning and arbitrary insistence on expeditiousness in the face of a justifiable request for delay.' " United States v. Bakker, 925 F.2d 728, 735 (4th Cir. 1991) (quoting Morris v. Slappy, 461 U.S. 1, 11-12 (1983)). The case had been set for a day certain, 40 prospective jurors had been brought to the courthouse and a number of outof-state witnesses had been brought to Virginia for trial. The motion was made at the last possible moment and after the trial proceedings had begun. Investigation showed that the settlement of the civil action, which produced the $18,000 that Gates wanted to use to employ his own attorney, was concluded at least one week before the scheduled trial. His motion to continue, however, was not made until the trial proceedings had begun.
 
 
 11
 Gates' attorney had made a motion for a continuance on July 17, 1991, upon the ground that Gates was without a telephone, which made it difficult for his attorney to have pretrial communications with him. It was also stated in this motion that Gates was involved in a civil suit in New York City. At the time of the first continuance motion, the court found that Gates did have a telephone and that his civil action had been settled. The district court did not abuse its discretion in conditioning a continuance upon the defendant's payment of costs, particularly where the defendant had lied to the court about not having a telephone and had settled his civil suit sufficiently in advance of the criminal trial date to be able to secure other counsel or at least to make a motion for continuance in a timely fashion and not wait until the morning of trial. His position is not improved by claiming a Sixth Amendment denial of counsel. He has made no claim of prejudice, and the trial court complimented his trial counsel on his preparation and presentation of the defense. The district court imposed a reasonable time limit on when Gates had to exercise his choice as to counsel. He delayed until the proceedings had begun, and it was not unreasonable to require him to bear the cost of any delay caused by him. The conditions imposed by the court on a continuance are not a forfeiture of property, but are an imposition of sanctions that were reasonable under the circumstances.
 
 III.
 
 12
 The district court ruled that the testimony of John King was admissible to establish the identity of the defendant and also to prove that Gates had made a false exculpatory statement during an interview with ATF agents when he stated that he had not been in the State of Virginia since September 1986. The court also found that the evidence was highly probative and that it should not be excluded because of a possible prejudicial effect. The admission of evidence is committed to the sound discretion of the trial court. We have stated:
 
 
 13
 As we have repeatedly held, the decision whether to admit evidence under this rule is one left to the sound discretion of the trial court. We will not upset such a decision except under "the most 'extraordinary' of circumstances," where that discretion has been plainly abused. Such an abuse occurs only when it can be said that the trial court acted "arbitrarily" or "irrationally" in admitting evidence. United States v. Masters, 622 F.2d 83, 88 (4th Cir. 1980); Garraghty v. Jordan, 830 F.2d 1295, 1298 (4th Cir. 1987).
 
 
 14
 This broadly deferential standard makes clear that we are reluctant to question a trial court's judgment under Rule 403, and for good reason. "Trial judges are much closer to the pulse of a trial than ... [we] can ever be [and] 'broad discretion' is necessarily accorded to them." (citations omitted).
 
 
 15
 United States v. Simpson, 910 F.2d 154, 157 (4th Cir. 1990).
 
 
 16
 The trial court heard extensive argument on the admission of this evidence and clearly stated its reason for finding the evidence admissible, as it conducted the balancing between probative value and possible undue prejudice that is required by the rule. The admission was within the court's discretion, and the court did not abuse its discretion in the admission of this evidence.
 
 IV.
 
 17
 At sentencing, the trial court departed upward from the 1988 Sentencing Guidelines and imposed a total of 14 months additional imprisonment. The court found that an upward departure was warranted first because the guidelines did not take into account the number of handguns involved, 34 handguns in the present case, and second because the guidelines did not take into account that one of the purchased guns subsequently "ended up in an extremely violent situation that endangered the lives of any number of law-abiding citizens and law enforcement officers; and this constituted an aggravating circumstance of a kind and to a degree not adequately taken into account by the Sentencing Guidelines."
 
 
 18
 The 1988 Sentencing Guidelines, which were in effect at the time the crimes were committed, were used at sentencing.
 
 A.
 
 19
 The first departure added four months to the sentence and was made upon a finding that the number of firearms purchased was not adequately taken into consideration by the Sentencing Commission in formulating guideline § 2K2.1, which reads:
 
 
 20
 § 2K2.1. Receipt, Possession, or Transportation of Firearms and Other Weapons by Prohibited Persons
 
 
 21
 (a)Base Offense Level:[9]
 
 
 22
 (b)Specific Offense Characteristics
 
 
 23
 (1)If the firearm was stolen or had an altered or obliterated serial number, increase by[1] level.
 
 
 24
 (2)If the defendant obtained or possessed the firearm solely for sport or recreation, decrease by[4] levels.
 
 
 25
 (c)Cross Reference
 
 
 26
 (1)If the defendant used the firearm in committing or attempting another offense, apply the guideline in respect to such other offense, or § 2X1.1 (Attempt or Conspiracy) if the resulting offense level is higher than that determined above.
 
 
 27
 U.S.S.G. § 2K2.1 (1988).
 
 
 28
 There is no indication in § 2K2.1 or in the Commentary or Application Note thereto that would indicate the Commission considered the number of firearms illegally purchased when it established the base offense level of 9. Appellant argues that, by the Commission's "deliberate omission" of this factor from § 2K2.1, but its inclusion in § 2K2.3, it is manifest that the Commission considered the number of purchased firearms when it wrote § 2K2.1 and decided that this factor was not relevant. Therefore, appellant maintains that no upward departure is appropriate.
 
 
 29
 Our review of departures is set forth in United States v. Hummer, 916 F.2d 186, 192 (4th Cir. 1990), as follows:
 
 
 30
 We review departures from the applicable Sentencing Guidelines range under a multi-part test of "reasonableness" derived from our reading of 18 U.S.C.A. § 3742 (West 1985 & Supp. 1990) in conjunction with 18 U.S.C.A. § 3553(b) (West Supp. 1990). United States v. Summers, 893 F.2d 63 (4th Cir. 1990). Under this test, we first examine de novo the specific reasons cited by the district court in support of its sentence outside the Guidelines range to ascertain whether those reasons encompass factors "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C.A. § 3553(b) (West Supp. 1990). If the sentencing court identified one or more factors potentially warranting departure, we apply a clearly erroneous standard and review the factual support in the record for those identified circumstances. Upon ascertaining that there is an adequate factual basis for the factors, we apply an abuse of discretion standard to determine if, on balance, the cited departure factors are of sufficient importance in the case such that a sentence outside the Guidelines range "should result." Id. Similarly, we apply an abuse of discretion standard to determine if the extent of departure was reasonable.
 
 
 31
 Section 2K2.1 has been amended in 1989, 1990, and 1991 (U.S.S.G. § 2K2.1, Historical Note (Nov. 1991)), and these amendments have generally increased the severity of punishment for firearms violations. It was not until the amendments effective November 1991 that the section included any reference to the number of firearms in the offense. It now provides:
 
 
 32
 (b) Specific Offense Characteristics
 
 
 33
 (1)If the offense involved three or more firearms, increase as follows:
 
 Number of FirearmsIncrease in Level
 
 34
 (A)3-4add 1 (B)5-7 add 2(C)8-12add 3(D)13-24add 4(E)25-49add 5(F)50 or more add 6.
 
 
 35
 U.S.S.G. § 2K2.1 (Nov. 1991).
 
 
 36
 It appears obvious that the Sentencing Commission did not consider the number of firearms when it establisheds 2K2.1 (effective 1988). Over time and with the experience it acquired in the interim, the Commission amended this section, effective November 1991, to provide an increase in offense level as indicated above.
 
 
 37
 We find no merit to the appellant's claim that the Commission did, by a process he refers to as "deliberate omission, encompass a number of firearms." To follow this reasoning would lead to a conclusion that everything not included in the guidelines has been carefully considered by the Commission and "deliberately omitted." The result would be no departures, and this cannot be reconciled with the clearly expressed intent of Congress to allow departures. See 18 U.S.C. § 3553(b).
 
 
 38
 Likewise, there is no merit to the claim that, because the number of firearms is reflected in § 2K2.2(b)(1), the element must have been considered and excluded from § 2K2.1. The guidelines cautioned against such assumptions. The Policy Statement tos 5K2.0 (Nov. 1991) provides:
 
 
 39
 Also, a factor may be listed as a specific offense characteristic under one guideline but not under all guidelines. Simply because it was not listed does not mean that there may not be circumstances when that factor would be relevant to sentencing. For example, the use of a weapon has been listed as a specific offense characteristic under many guidelines, but not under immigration violations. Therefore, if a weapon is a relevant factor to sentencing for an immigration violation, the court may depart for this reason.
 
 
 40
 U.S.S.G. § 5K2.0 Policy Statement (Nov. 1991).
 
 
 41
 The issue in the present case is not whether the Commission considered the number of firearms when it adopted § 2K2.2, but whether this element was considered when it adopted § 2K2.1. We find no evidence that the number of firearms was considered when § 2K2.1 was adopted. The base offense level, specific offense characteristics, and other adjustments to this section make no mention of the number of firearms, and the number of firearms purchased by a nonresident using false identification is a relevant factor that is important to the sentencing court.
 
 
 42
 Subsequent amendments to this section also indicate that the element was not originally considered.
 
 B.
 
 43
 The district court made an upward departure of 10 months because one of the firearms illegally purchased by Gates was used in a drugrelated kidnapping. In making this departure, the sentencing court stated:
 
 
 44
 I would further find as a fact that in October of 1988 one of the firearms which had been purchased by Mr. Gates was recovered by New York authorities. A detective with 20something years' experience, as I recall-I'd have to look back at my notes for the exact number of years' experience, but he was obviously a very experienced member of the New York City police force, came to this court to testify, and he testified and was a credible witness, that as a part of a drug and kidnapping investigation, one of these firearms was recovered. On agreement of all parties he took it back to New York City because criminal charges are still pending in New York City in regard to this incident.
 
 
 45
 The incident involved, as I indicated, a drug kidnapping, and all the individuals apprehended were armed and wearing bulletproof vests, and there were a number of New York City police officers involved in the apprehension.
 
 
 46
 So the court would find that one of the guns which Mr. Gates has been convicted of illegally purchasing was involved in this very violent episode in New York City, and the court makes that as a finding of fact.
 
 
 47
 The record reflects that appellant did not present this upward adjustment as an issue to the district court. No objection was made in the district court and the issue has not been preserved for appeal. As a rule, we will not consider an issue not raised in the district court, except to prevent manifest injustice, and we find no such injustice on the present record.
 
 
 48
 We find the degree of upward departure to be reasonable and within the district court's discretion, and the number of firearms purchased is sufficiently important to justify a sentence outside the guidelines. The other factor was not preserved for appeal.
 
 AFFIRMED