**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 10-4461**

─────────────

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

CLIFTON JEROME WASHINGTON,

                    Defendant - Appellant.

─────────────

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.    James C. Dever III,
District Judge.  (5:09-cr-00105-D-1)

─────────────

Argued:  October 28, 2011          Decided:  January 6, 2012

─────────────

Before KEENAN and WYNN, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

─────────────

Affirmed by unpublished opinion.  Judge Wynn wrote the opinion,
in which Judge Keenan and Senior Judge Hamilton concurred.

─────────────

**ARGUED:** Robert Hood Hale, Jr., ROBERT H. HALE, JR. & ASSOCIATES,
Raleigh, North Carolina, for Appellant.   Eric David Goulian,
OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina,
for Appellee.   **ON BRIEF:**  George E. B. Holding, United States
Attorney, Jennifer P. May-Parker, Assistant United States
Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North
Carolina, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

Clifton Jerome Washington appeals his jury conviction on one count of possession of a firearm by a convicted felon. Washington contends that: (1) the admission of out-of-court statements of a confidential police informant violated his Sixth Amendment right of confrontation; and (2) the district court abused its discretion by finding that the probative value of the out-of-court statements was not substantially outweighed by the danger of unfair prejudice. We find no error and therefore affirm.

I.

Washington was indicted by a grand jury in the Eastern District of North Carolina on April 15, 2009 on one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924.

Before trial, the Government indicated that it did not plan to call as a witness the confidential informant who provided information that led to the stop of a vehicle in which Washington was a passenger. The Government informed the district court that it intended to have Officer Billy Dee Greenwood of the Raleigh Police Department testify that a confidential informant reported to him that an individual had fired a shot in Raleigh, North Carolina and then got into a

2

multi-colored Crown Victoria, for the purpose of explaining why the police stopped the car.

Washington moved in limine to prevent the admission of the confidential informant's out-of-court statements. Washington argued the introduction of the informant's statements were unnecessary, irrelevant, and unduly prejudicial. In addition, Washington maintained that testimony about the out-of-court statements from Officer Greenwood, rather than from the confidential informant himself, would deny him his constitutional right to confront his accusers.

The district court disagreed and specifically found that under the Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004), the out-of-court statements did not implicate Washington's Sixth Amendment confrontation rights because the evidence would not be offered for the truth of the matter asserted. The district court also found that the probative value of this evidence was not substantially outweighed by any danger of unfair prejudice under Federal Rule of Evidence 403. The district court noted that contemporaneously with the introduction of the evidence, it would issue a limiting jury instruction directing the jury not to consider the statements for the truth of the matter asserted. According to the district court, such an instruction would remove the danger of unfair prejudice.

3

Trial commenced on January 11, 2010. Officer Jonathan MCCann testified as the Government's first witness. Officer McCann testified that he went on duty on December 19, 2008 at 7:00 a.m. Officer McCann further testified that he received a phone call around 7:10 a.m. from Officer Greenwood advising that there was a suspect in southeast Raleigh, who was in possession of a firearm, traveling in a multi-colored Crown Victoria. Officer McCann recalled that he had several conversations with Officer Greenwood, who was talking to an informant and trying to update Officer McCann as he arrived in the area. Because of the possibility that there was a firearm in the vehicle, Officer McCann had radioed for assistance before he spotted the vehicle.

Officer McCann observed a multi-colored Crown Victoria traveling north on East Street near Martin Luther King Boulevard in Raleigh. Officer McCann saw two individuals in the vehicle, and the passenger did not appear to be wearing a seatbelt. Officer McCann further testified that the Crown Victoria passed two vehicles that were waiting to make a left turn and made a right turn on East Davie Street, in violation of a North Carolina statute prohibiting improper passing in a single lane. Officer McCann made the same right turn, another patrol vehicle pulled up behind him, and then Officer McCann initiated a traffic stop by turning on his emergency lights.

4

Officer McCann and Officer Matroo, who was riding with Officer McCann, approached the vehicle with their service weapons drawn in the low-ready position because of the suspicion that there could be a firearm in the car. Christian Diggs, the driver of the vehicle, and Washington, the passenger, were asked to step out of the vehicle. Following pat-down searches, neither was found to have a weapon. Diggs consented to a search of the vehicle, during which Officer McCann found a silver semi-automatic firearm inside the armrest between the driver and passenger seats. Because of the firearm's position on its side with the barrel pointing toward the steering wheel, Officer McCann believed that the weapon had likely been placed there by the passenger. When Diggs and Washington were advised that a firearm was located in the vehicle, both denied ownership of the weapon.

At trial, before Officer Greenwood testified, the district court instructed the jury as follows:

> Ladies and gentlemen of the jury . . . . You have heard a little bit about what a confidential informant told to Officer Greenwood. You must not consider the statement relayed by that confidential informant to Officer Greenwood as if it were true in deciding if the defendant committed the acts charged in the indictment.
> The evidence concerning what that individual may or may not have said to Officer Greenwood is being offered for the limited purpose of explaining why Officer Greenwood began an investigation and then took steps himself during that investigation. This is the sole purpose for which such evidence concerning

5

> alleged statements of a confidential informant are being offered, and again, those statements are not being offered for the truth of the matter asserted.

J.A. 299-300.

Thereafter, Officer Greenwood testified that he received information from a confidential and reliable source on December 19, 2008 that there was a person who had just fired a shot and was in possession of a firearm. Officer Greenwood further testified that over the course of several telephone calls, the confidential informant provided a description of the individual and also stated that the individual had gotten into the passenger seat of a multi-colored older model Crown Victoria traveling northbound. Officer Greenwood explained that he received this information "as it was happening."

In response to Officer Greenwood's testimony, the defense counsel renewed the objection regarding the admission of the confidential informant's out-of-court statements, which the district court again overruled. The district court did, however, provide a second limiting jury instruction:

> [L]adies and gentlemen, you will just recall my limiting instructions that the testimony concerning what that confidential informant told Officer Greenwood is not being offered for the truth of what that confidential informant said. It's being offered to explain what Officer Greenwood did next.

J.A. 302-03. Thereafter, Officer Greenwood testified that he relayed a description of the person, the vehicle, and the area

6

and direction of travel of the vehicle to Officer McCann. When Officer Greenwood arrived at the scene, he identified Washington.

Officer Greenwood further testified that both Diggs and Washington were taken to the police station. Officer Greenwood and Federal Bureau of Investigation Special Agent Rob Richards advised Washington of his Miranda rights. Washington nevertheless agreed to speak with them and signed a Miranda waiver form. In summarizing his interview with Washington, Officer Greenwood testified that after initially denying knowledge of the gun, Washington gave a statement admitting that the gun found in the Crown Victoria was his and that he had fired that gun earlier that day to scare an individual named "Chill Will" with whom he was having a dispute. Washington also admitted that he placed the gun underneath the center console of the Crown Victoria after the car was pulled over by the police.

On cross-examination, Officer Greenwood recalled that he had previously testified at other hearings about what the confidential informant told him about this case. Defense counsel questioned Officer Greenwood regarding this previous testimony whether the confidential informant told Officer Greenwood that the informant saw the person making the shot or, in the alternative, whether the confidential informant heard the shot from several streets away. Officer Greenwood confirmed

7

that it was his testimony that the confidential informant told him that the informant had seen a person fire a gun before getting into the Crown Victoria. Officer Greenwood further testified that the evidence from the confidential informant was "reliable" and that the confidential informant was someone he believed gave him "true" information.

Defense counsel objected to the testimony, and specifically to the characterization by Officer Greenwood that the evidence from the informant was true. In response, the district court gave a third limiting instruction:

> Well, again, ladies and gentlemen of the jury, the court has instructed you twice that the - you have heard evidence of what a confidential informant told Officer Greenwood. Do not consider the confidential informant's statements for the truth of the matter asserted in deciding if the defendant committed the acts charged in the indictment.
> The evidence concerning what the confidential informant said to Officer Greenwood is being offered for the limited purpose of explaining why Officer Greenwood began an investigation and took particular steps during that investigation. This is the sole purpose for which that evidence of the confidential informant is being provided and may be considered.

J.A. 332. During the Government's re-direct examination of Officer Greenwood, the district court gave the jury a fourth and final limiting instruction:

> Again, ladies and gentlemen, I remind you of my instruction that I have given to you a number of times, that the testimony about what the confidential informant said is not offered for the truth of the matter asserted.

8

It's only offered to explain why Officer Greenwood then took the investigative steps that he took, as I have described earlier in the limiting instruction I have given to you.

J.A. 348-49.

The Government rested its case after reading a stipulation into the record that Washington had previously been convicted of a crime punishable by more than one year in prison. Washington presented no evidence.

During the jury charge conference, defense counsel proposed that the reasons for the limiting instructions be explained to the jury, in the following manner:

> The Court would consider instructing the jury something to the effect of the reason why [the jury] can't consider this evidence as substantive evidence for the truth of what [the confidential informant] said is because the confidential informant did not come into court and testify and was not subject to cross-examination.
> Or, in the alternative, if I can bring that up in closing, and just say, look, just so you will know why you are not supposed to consider that as substantive evidence for the truth of the matter asserted, this person did not come and testify before you and I didn't get a chance to cross-examine him on things like opportunity to observe, bias, drug use, whether or not he was getting paid, and some of the things we know from the suppression hearing.

J.A. 376. The district court noted that the jury had already been instructed and, further, stated that the court was confident that the jury would follow the instructions. Additionally, the district court expressed concern that an

9

additional explanatory instruction would be inappropriate and confusing.  An agreement was then reached:

> [Defense counsel]:  Okay.  I certainly don't want to try to explain the Court's instruction, but if I can say, look, you didn't get a chance to judge this person's credibility, he didn't come into court. The government choose [sic] not to bring this person in here, and you have been instructed not to consider what this person said for the truth of the matter. That is probably enough for me.

> [The Government]:  I have no objection to that.

> The Court: Okay.  That is fine.

J.A. 377-78.

The jury ultimately convicted Washington of one count of possession of a firearm by a convicted felon.  The district court sentenced him to 120 months' imprisonment.  Washington appeals.[1]

## II.

### A.

On appeal, Washington contends that by admitting out-of-court statements made by a confidential informant to the police, the district court violated his right to confrontation under the Sixth Amendment of the United States Constitution.  Washington argues that the district court allowed the introduction of

---

[1]  Washington also moved to file with this Court a supplemental brief; that motion is hereby granted.

testimonial hearsay statements of a confidential police informant that proved him guilty of possession of a firearm. We disagree.

"We review alleged Confrontation Clause violations under the de novo standard of review." United States v. Lighty, 616 F.3d 321, 376 (4th Cir. 2010), cert. denied, 132 S. Ct. 451 (2011). The Confrontation Clause guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. In Crawford, the Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." 541 U.S. at 53–54.

However, the admission of non-hearsay does not implicate a defendant's confrontation. See id. at 60 n.9 ("The Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." (citing Tennessee v. Street, 471 U.S. 409, 414 (1985))); Fed. R. Evid. 801(c) (defining an out-of-court statement as hearsay if it is "offered in evidence to prove the truth of the matter asserted"); see also United States v. Ayala, 601 F.3d 256, 272 (4th Cir. 2010) ("Crawford is quite explicit that the Confrontation Clause does not eliminate the use of testimonial

statements across the board."), cert. denied, 131 S. Ct. 262 (2010).

As observed by the Seventh Circuit, "[t]here are no doubt times when the testimony regarding a tip from an informant is relevant. If a jury would not otherwise understand why an investigation targeted a particular defendant, the testimony could dispel an accusation that the officers were officious intermeddlers staking out [the defendant] for nefarious purposes." United States v. Silva, 380 F.3d 1018, 1020 (7th Cir. 2004). As the Government argues, this is precisely the situation presented here: Officer McCann's actions, i.e., following the Crown Victoria, finding a legal basis to pull it over, approaching it with his weapon drawn, removing the driver and passenger, and obtaining permission to search the vehicle, can only be understood in the context of the confidential informant's statement that an individual that recently fired a gun might be in the vehicle with a gun. Therefore, the confidential informant's out-of-court statements to Officer Greenwood were properly admitted not for the truth of the matter asserted, but rather for the limited, permissible purpose of explaining the investigative activity that ensued.

We have held that such out-of-court statements that explain or provide context for the actions of law enforcement officers are routinely admitted as non-hearsay. See, e.g., United States

12

v. Love, 767 F.2d 1052, 1063 (4th Cir. 1985) (holding that an agent's testimony concerning information received from another agent "was offered not for its truth but only to explain why the officers and agents made the preparations that they did in anticipation of the appellant's arrest. As such it was not inadmissible hearsay") (citations omitted)).

Further, the district court gave four limiting instructions to the jury regarding the proper use of the evidence. The district court repeatedly told the jury not to consider the informant's statement to Officer Greenwood for the truth of the matter asserted. In the first instruction, the district court explained to the jury, "you must not consider the statement relayed by the confidential informant to Officer Greenwood as if it were true in deciding if the defendant committed the acts charged in the indictment." J.A. 299. In subsequent instructions, jurors were reminded, "you will just recall my limiting instructions that the testimony concerning what that confidential informant told Officer Greenwood is not being offered for the truth of what that confidential informant said." J.A. 302-03. The district court also instructed the jury that the evidence was "being offered for the limited purpose of explaining why Officer Greenwood began an investigation and took particular steps during that investigation." J.A. 332.

In light of the legitimate rationale for admitting the out-of-court statements, as well as the limiting instructions, the district court did not err in allowing the statements, which did not implicate the Confrontation Clause, into evidence.

B.

With his second argument, Washington asserts that the district court abused its discretion in finding that the probative value of the out-of-court statements was not substantially outweighed by the danger of unfair prejudice. Washington contends that, even assuming arguendo that the out-of-court statements of the confidential informant were not hearsay, the district court abused its discretion in failing to exclude them under Federal Rules of Evidence 401 and 403. We disagree.

A district court's admission of evidence is reviewed for abuse of discretion. United States v. Perkins, 470 F.3d 150, 155 (4th Cir. 2006). Such discretion is abused only when a "district court act[s] arbitrarily or irrationally." United States v. Moore, 27 F.3d 969, 974 (4th Cir. 1994) (internal quotation marks and citation omitted).

Rule 401 provides for the admission of relevant evidence, i.e., "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action

14

more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Therefore, evidence is relevant if it is "worth consideration by the jury" or has a "plus value." United States v. Queen, 132 F.3d 991, 998 (4th Cir. 1997) (internal quotation marks and quotation omitted). "As we have often observed, relevance typically presents a low barrier to admissibility." United States v. Leftenant, 341 F.3d 338, 346 (4th Cir. 2003) (citation omitted).

Under Rule 403, otherwise admissible evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. "Rule 403 only requires suppression of evidence that results in unfair prejudice—prejudice that damages an opponent for reasons other than its probative value, for instance, an appeal to emotion, and only when that unfair prejudice substantially outweighs the probative value of the evidence." United States v. Mohr, 318 F.3d 613, 619-20 (4th Cir. 2003) (internal quotation marks and citation omitted). "[I]n reviewing the trial court's decision, we 'look at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect.'" United States v. Simpson, 910 F.2d 154, 157 (4th Cir. 1990) (quoting Mullen v. Princess Anne Volunteer Fire Co., Inc., 853 F.2d 1130, 1135 (4th Cir. 1988)).

15

Here, the confidential informant's statements to Officer Greenwood were not only relevant; they provided a proper understanding of the officers' investigative actions. The information reported by the informant that an individual had fired a gun and then gotten into a multi-colored Crown Victoria was particularly relevant in light of the presence of the back-up officers, the officers' display of their weapons, the removal of the occupants from the vehicle, and the search of the vehicle.

Further, the danger of "unfair prejudice" was minimal. The district court instructed the jury four times that the informant's statements were not to be considered for their truth, but only to explain the officers' actions. Additionally, because the jury also heard Officer Greenwood testify that Washington admitted to possessing and firing the gun, the out-of-court statements likely had no appreciable impact. Accordingly, the district court acted well within its discretion in finding that the probative value of the out-of-court statements was not substantially outweighed by any danger of unfair prejudice.

16

III.

For the foregoing reasons, we affirm the judgment of the district court.

<u>AFFIRMED</u>