**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 14-4340**

———————

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

DAHEEM BRYANT-ROYAL,

        Defendant – Appellant.

———————

Appeal from the United States District Court for the District of Maryland, at Baltimore. William D. Quarles, Jr., District Judge. (1:12-cr-00040-WDQ-1)

———————

Submitted: February 27, 2015        Decided: May 21, 2015

———————

Before SHEDD, DUNCAN, and THACKER, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

Marta K. Kahn, THE LAW OFFICE OF MARTA K. KAHN, LLC, Baltimore, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, Rachel Yasser, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland; Christine Duey, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted Daheem Bryant-Royal of sexual abuse of a minor in violation of 18 U.S.C. § 2243(a). Bryant-Royal appeals his conviction on three grounds. He claims (1) the prosecutor's discussion during closing argument of his out-of-court statements not in evidence deprived him of his constitutional right to a fair trial; (2) his counsel's inappropriate remarks at closing argument deprived him of the effective assistance of counsel; and (3) the district court erred by admitting into evidence the testimony of his ex-girlfriend and phone records showing text messages and phone calls between the two on the night of the incident at issue. For the reasons that follow, we affirm.

I.

A.

On September 4, 2011, Bryant-Royal, who was 21 years old at the time, attended a party with a group of teenaged acquaintances who lived at a military base in Maryland (the "Base"). Prior to the party, Bryant-Royal made plans to meet his ex-girlfriend after the party. During the evening, Bryant-Royal stated his intention to "get some tonight." S.J.A. 170.

The party guests included M.J., who was 15 years old at the time. M.J. consumed alcoholic beverages at the party. When the

2

guests decided to leave the party, she required assistance walking to the car, and vomited multiple times during the drive back to the Base. Over the course of the drive, Bryant-Royal, also in the car and expressing frustration that the trip was taking too long, made several unsuccessful attempts to call his ex-girlfriend. She eventually answered his call, but said that she would not see him that night because he would be returning to the Base too late.

The group returned to the Base and dropped off Bryant-Royal before driving to another guest's house. M.J. was carried into the house and left near a toilet. Shortly thereafter, Bryant-Royal arrived at the house. A member of the group testified that Bryant-Royal was agitated because he had not been able to meet his ex-girlfriend. J.A. 97. After a time, everyone at the house except for Bryant-Royal and M.J. went to bed. They awoke to find M.J. crying in the living room, her hair and clothes disheveled. M.J. stated that Bryant-Royal had raped her. Her friends took her home, and M.J. reported the sexual assault to her parents and law enforcement officials. Forensic evidence confirmed that sexual intercourse had taken place between M.J. and Bryant-Royal.

B.

Bryant-Royal was indicted under 18 U.S.C. § 2243 (Count One, for "[s]exual abuse of a minor or ward"), and 18 U.S.C.

§ 2242 (Count Two, for "[s]exual abuse").  Count One required the government to prove that Bryant-Royal, "in the special maritime and territorial jurisdiction of the United States . . . knowingly engage[d] in a sexual act with another person who[] (1) ha[d] attained the age of 12 years but ha[d] not attained the age of 16 years; and (2) [wa]s at least four years younger than [he]."  18 U.S.C. § 2243(a).  Bryant-Royal's knowledge of M.J.'s age was not an element of the offense.  Id. § 2243(d).  However, Bryant-Royal raised an affirmative defense--which he had the burden to "establish by a preponderance of the evidence"--that he "reasonably believed that [M.J.] had attained the age of 16 years" at the time of the incident.  Id. § 2243(c)(1).  To rebut this defense, the prosecution introduced the testimony of M.J. and a friend of hers, each of whom testified about a different conversation in which Bryant-Royal asked about M.J.'s age and was told that she was 15.  J.A. 72, 99.

Count Two required the government to prove that Bryant-Royal, "in the special maritime and territorial jurisdiction of the United States[,] . . . knowingly . . . engage[d] in a sexual act with another person [who was] incapable of appraising the nature of the conduct; or . . . physically incapable of participation in, or communicating unwillingness to engage in, that sexual act."  18 U.S.C. § 2242.  Bryant-Royal's defense for

4

Count Two centered on the theory that M.J. consented to the sexual act and, fearing pregnancy or other consequences, concocted the rape allegation. By contrast, the government sought to prove that Bryant-Royal's conduct was knowing because it was motivated by his anger at not getting back in time to meet his ex-girlfriend. To prove this theory, the government offered the testimony of Bryant-Royal's ex-girlfriend to establish Bryant-Royal's state of mind directly before the assault. She testified that on the night of the offense, Bryant-Royal called her approximately nine times. The government also introduced into evidence phone records showing text messages and phone calls between the two on the night of the offense.

During closing argument, defense counsel began by arguing that M.J. consented to the sexual acts. He suggested that M.J. panicked when Bryant-Royal ejaculated inside of her because she did not want to become pregnant.

Turning to the argument that Bryant-Royal reasonably believed M.J. was 16, defense counsel referred to out-of-court statements Bryant-Royal allegedly made after his arrest. Counsel stated that Bryant-Royal "thought she was 16." S.J.A. 356. Counsel explained that Bryant-Royal "told [U.S. Army Criminal Investigation Command], 'I thought she was of age,'" and stated that the jury "didn't see the tape" of that

5

statement. S.J.A. 356. The government objected to each of these assertions because they referenced statements not in evidence. The court overruled each objection, but instructed the jury to base its verdict on its recollection of the evidence. See S.J.A. 357. Given that Bryant-Royal's statements were not in evidence, the instruction effectively directed the jury to disregard them.

Thereafter, in rebuttal, the government also referred to Bryant-Royal's out-of-court statements, noting: "[I]f we're going to talk about the Defendant's prior statements, he admitted [M.J.] looked young. . . . He admitted she had braces. He didn't say that she told him that she was 16. That's not what he said. He said that he thought she was at least 21." S.J.A. 369 (emphasis added). Defense counsel objected to these statements, but the court again overruled the objection.

The jury convicted Bryant-Royal on Count One (sexual abuse of a minor) but was unable to reach a verdict as to Count Two (sexual abuse). The district court then sentenced Bryant-Royal to 120 months' incarceration for Count One, and dismissed Count Two upon motion of the government. Bryant-Royal timely appealed his conviction.

6

II.

The issues before us on appeal are whether (1) the prosecutor's discussion of Bryant-Royal's out-of-court statement that he thought M.J. was 21 deprived Bryant-Royal of due process, in violation of the Fifth Amendment to United States Constitution; (2) Bryant-Royal's counsel's remarks at closing argument deprived him of the effective assistance of counsel, in violation of the Sixth Amendment; and (3) the district court erred by admitting into evidence Bryant-Royal's communications with his ex-girlfriend. We address each issue in turn.

A.

We first consider Bryant-Royal's due process argument. Bryant-Royal explains that, because no reasonable person could have believed that M.J. was 21, the prosecutor's assertion that Bryant-Royal had said that he thought M.J. was 21 undermined his more reasonable argument that he believed she was 16. The government concedes that the prosecutor's statement was improper, but contends that the remarks were invited by the defense and did not prejudice the defendant.

In order to demonstrate that prosecutorial misconduct deprived him of due process, a defendant "must show [1] that the [prosecutor's] remarks were improper and [2] that they prejudicially affected the defendant's substantial rights so as to deprive [him] of a fair trial." United States v. Wilson, 135

7

F.3d 291, 297 (4th Cir. 1998) (alterations in original) (quoting United States v. Adam, 70 F.3d 776, 780 (4th Cir. 1995)) (internal quotation marks omitted). Assuming, without deciding, that the prosecutor's remarks were improper, we consider six factors to determine prejudice under the second prong of the Wilson test:

> (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters[;] . . . (5) whether the prosecutor's remarks were invited by improper conduct of defense counsel[;] . . . and (6) whether curative instructions were given to the jury.

United States v. Baptiste, 596 F.3d 214, 226 (4th Cir. 2010) (alterations in original) (quoting Wilson, 135 F.3d at 299). Ultimately, the question is "whether the prosecutor['s] comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).

Applying the factors set forth above, we conclude that Bryant-Royal has failed to show that the remarks deprived him of a fair trial. First, we find that though the prosecutor's remarks had the potential to mislead the jury with respect to Bryant-Royal's belief about M.J.'s age, the remarks did not

8

prejudice him. With respect to Bryant-Royal's affirmative defense, the jury had to determine "whether [Bryant-Royal] held an opinion [that M.J. was older than fifteen,] and if so whether that opinion was reasonable." United States v. Yazzie, 976 F.2d 1252, 1256 (9th Cir. 1992). Although there was evidence that could create an objectively reasonable belief that M.J. was at least 16, see Appellant's Br. at 13, there was no evidence outside of defense counsel's improper statements at closing as to how old Bryant-Royal actually believed she was. Because Bryant-Royal thus failed to show by a preponderance of the evidence that he reasonably believed M.J. was at least 16 regardless of the prosecutor's remarks, those remarks did not prejudice him.

Second, the prosecutor's remarks were isolated. The prosecutor referred only once to the statement and discussed it only briefly. Third, there was competent proof at trial establishing Bryant-Royal's guilt for Count One. Undisputed evidence established the elements of Count One, and, with respect to Bryant-Royal's affirmative defense, the government presented evidence that Bryant-Royal had been twice told that M.J. was 15.

Fourth, there is no reason to believe that the prosecutor's remarks were made in order to divert the jury's attention to extraneous matters. To the contrary, and with respect to the

9

fifth factor, the comments appear to have been made in direct response to defense counsel's improper remarks.

Sixth, and finally, any prejudice to Bryant-Royal was cured by the district court's final jury instructions. The court instructed the jury to "rely upon [its] own recollection of the evidence," and not "[w]hat the lawyers ha[d] said." S.J.A. 377. A jury following this instruction would not have considered any evidence of what Bryant-Royal said or did not say about his belief in M.J.'s age because no such evidence was introduced. And we presume that juries follow courts' instructions. See, e.g., United States v. Cone, 714 F.3d 197, 230 (4th Cir. 2013).

Upon consideration of these six factors, we hold that the prosecutor's improper remarks at closing argument did not result in a denial of due process. See Bennett v. Angelone, 92 F.3d 1336, 1346-47 (4th Cir. 1996) (holding that although the prosecutor's improper religious argument during closing was "objectionable and unwarranted," when "viewed in the total context of the trial, it was not sufficiently egregious to render [the defendant's] trial fundamentally unfair" because of the strength of the evidence against him and the curative jury instruction).

## B.

We next consider Bryant-Royal's contention that his attorney's remarks at closing argument deprived him of the

10

effective assistance of counsel in violation of the Sixth Amendment. Bryant-Royal argues that defense counsel made arguments that were (1) improper; (2) based on evidence not in the record; (3) irrelevant to any disputed element or defense; and (4) inflammatory to the jury. See Appellant's Br. at 22-24. Bryant-Royal submits that these remarks operated collectively to deprive him of effective counsel.

We "routinely decline to address on direct appeal" a claim of ineffective assistance "unless 'the lawyer's ineffectiveness conclusively appears from the record.'" United States v. Brown, 757 F.3d 183, 191 (4th Cir. 2014) (quoting United States v. Bernard, 708 F.3d 583, 593 (4th Cir. 2013)). We follow that practice here, and decline to reach Bryant-Royal's ineffective-assistance claim.

C.

Finally, we consider Bryant-Royal's argument that the district court erred by admitting evidence of his communications with his ex-girlfriend on the night of the offense, in violation of Federal Rule of Evidence 403. That rule provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. We "review a district

11

court's admission of evidence over a Rule 403 objection under a broadly deferential standard." United States v. Love, 134 F.3d 595, 603 (4th Cir. 1998) (quoting United States v. Simpson, 910 F.2d 154, 157 (4th Cir. 1990)) (internal quotation marks omitted). Indeed, "[a] district court's decision to admit evidence over a Rule 403 objection will not be overturned except under the most extraordinary circumstances, where that discretion has been plainly abused." United States v. Williams, 445 F.3d 724, 732 (4th Cir. 2006) (quoting Simpson, 910 F.2d at 157) (internal quotation marks omitted).

Under Rule 403, a trial court must ask "whether such evidence has the potential to cause undue prejudice, and if so, whether the danger of such undue prejudice substantially outweighs its probative value." United States v. Mark, 943 F.2d 444, 449 (4th Cir. 1991). "[W]hen reviewing a trial court's decision to admit evidence under Rule 403, we must look at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." United States v. Udeozor, 515 F.3d 260, 265 (4th Cir. 2008) (quoting Simpson, 910 F.2d at 157) (internal quotation marks omitted). We find no such prejudice here.

The phone records and testimony of Bryant-Royal's ex-girlfriend had no bearing on Bryant-Royal's reasonable belief about M.J.'s age, which was the only disputed issue with regard

12

to Count One, the only count for which he was convicted. Moreover, Rule 403 excludes only evidence that has the potential to cause <u>undue</u> prejudice, and only when such potential <u>substantially outweighs</u> the evidence's probative value. <u>Mark</u>, 943 F.2d at 449. Here, while the evidence had little probative value--at most, it established Bryant-Royal's desire to engage in sexual intercourse and his frustration that he was unable to meet his ex-girlfriend that night--it also lacked prejudicial effect. The evidence suggested, if anything, that Bryant-Royal wanted to see his ex-girlfriend late that night, not that he planned to rape a person he knew to be 15. Because the evidence did not carry the risk of causing prejudice that substantially outweighed its probative value, the district court did not err in admitting it.

### III.

For the foregoing reasons, we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.[*]

AFFIRMED

---

[*] We also deny as moot the government's motion to supplement the record, ECF No. 44.

13